**In re Claire Huffe FESTNER, SS#: 128–20–3500 Debtor.**

**Bankruptcy No. S–8501318–5.**

United States Bankruptcy Court, E.D. North Carolina.

Nov. 1, 1985.

H. Frank Allen, Tarboro, N.C., for debtor.

Robert A. Ponton, Jr., Raleigh, N.C., for IBM.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the confirmation of the debtor's chapter 13 plan and the objection filed by IBM Coastal Employees Federal Credit Union ("IBM Credit Union"). The trustee recommended that the plan be confirmed, but did not respond to the objections raised by IBM Credit Union, nor did the trustee appear at the confirmation hearing held on October 15, 1985.

### FACTS

Claire Huffe Festner filed a petition seeking relief under chapter 13 of the Bankruptcy Code on August 5, 1985. Ms. Festner, 57, is employed by IBM at Research Triangle Park, North Carolina as a procedures analyst. Her monthly net income from IBM is $1,193 and she receives $200 per month from a daughter who lives in Ms. Festner's home. The debtor's schedules reflect monthly living expenses of $1,130 which the court finds to be reasonable in the circumstances.

The debtor owns no real property and her personal property (a 1980 Oldsmobile with a market value of $4,000 subject to a $2,473.98 lien, household furniture valued at $1,500, and 19 shares of IBM stock valued at approximately $2,450.00 subject to a lien to IBM Credit Union of $2,802.08) is all claimed as exempt.

According to a report filed by the trustee subsequent to the hearing, the debtor's unsecured claims (based upon those listed by the debtor and proofs of claim filed by creditors) amount to $18,014.37. There is a secured obligation (secured by the 1980 Oldsmobile) to Beneficial Finance of $2,473.98 which is payable in monthly installments of $104 and a secured obligation

(secured by the 19 shares of IBM stock) to IBM Credit Union of $2,802.08 (including future interest) which is payable in monthly installments of $85.

The debtor's plan calls for payments of $260 for 57 months. After paying the debtor's attorney, costs of administration, the two secured debts, ($104.00 per month to Beneficial Finance and $85 per month to IBM Credit Union) the balance is to be paid to unsecured creditors. Based upon the trustee's estimate of unsecured claims, the debtor's plan would pay unsecured claimants a dividend of approximately 42% [$260 per month $\times$ 57 = $14,820 less 13% for costs of administration and attorney's fees = $12,893.40 ($14,820 — $1,926.60 = $12,893.40) less secured claims of $5,276.06 = $7,617.34 available for unsecured claims; $7,617.34 $\div$ $18,014.37 = 42% dividend].

On the surface, the debtor's plan seems to meet the confirmation requirements of 11 U.S.C. § 1325. The debtor's schedules reflect net available monthly income of $263, and the debtor has agreed to pay $260 per month through her plan. It also appears from the schedules that the debtor's assets are either encumbered or exempt and unsecured creditors would receive more through the plan than they would receive in a chapter 7 liquidation (42% versus 0%).

IBM Credit Union, which has unsecured claims totaling $7,082.27, however, contends that Ms. Festner's payment of $260 per month does not represent *all* of her disposable income. Specifically, IBM Credit Union contends that two payroll deductions aggregating $47 per week should be considered as part of Ms. Festner's disposable income. The weekly deductions include $25 for retirement benefits and $22 to purchase IBM stock under an employee stock option plan. The $25 deduction is for a *voluntary* retirement program which is in addition to the standard Retirement Plan provided by IBM at no cost to its employees.

IBM Credit Union also argues that the payment of $85 per month toward the debt secured by the 19 shares of IBM stock should be made available for unsecured claims and that the 19 shares could be sold to satisfy IBM Credit Union's secured claim.

■ The court finds that the weekly deduction of $25 for voluntary retirement benefits, the weekly deduction of $22 to purchase IBM stock, and the $85 monthly payment to satisfy the loan from IBM Credit Union secured by 19 shares of IBM stock are not expenditures which are necessary for the maintenance or support of the debtor or a dependent of the debtor. These expenditures are desirable from the debtor's standpoint, but they are certainly not necessary. Additional pension plans and stock purchases may be a wise investment which enhance an individual's financial security, but the debtor is not entitled to acquire them at the expense of unpaid creditors. If these sums are added to the $263 per month net available income projected by the debtor's schedules, the debtor's disposable income as defined in 11 U.S.C. § 1325(b)(2) would be $19,860 for a period of 36 months ($263 $\times$ 36 months = $9,468; $47 $\times$ 156 weeks = $7,332; and $85 $\times$ 36 months = $3,060). The dividend to unsecured creditors would be 82% ($19,860–$2,581.80 costs of administration and attorney's fees at 13% = $17,278.20 less secured claims of $2,473.98 = $14,804.22 available for unsecured claims; $14,804.22 + $18,014.37 = 82%).

## DISCUSSION AND CONCLUSIONS

11 U.S.C. § 1325(b) provides:

(1) If the trustee or holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first

**534**

payment is due under the plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor. . . .

\* \* \* \* \* \*

The debtor's plan does not propose to pay the full amount of unsecured claims, nor does it provide that all of the debtor's projected disposable income will be committed to the plan.

The debtor argues that the 57 month plan will provide unsecured creditors more than they would receive if the debtor filed under chapter 7, i.e., 42% versus 0%. That, however, assumes that the chapter 7 filing by the debtor with disposable monthly income of approximately $540 would not constitute a substantial abuse under 11 U.S.C. § 707(b). In any event, whether the unsecured creditors are receiving more under the plan than they would under a chapter 7 case is not a part of the requirement of § 1325(b). The debtor clearly does not meet the conditions of § 1325(b), and the plan cannot be confirmed. Accordingly,

IT IS HEREBY ORDERED that the objection to confirmation filed by IBM Coastal Employees Credit Union is ALLOWED, and confirmation of the debtor's proposed plan is DENIED.