**In re Annette Renaye FOUNTAIN, Debtor.**

**Bankruptcy No. 92–30019–S.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 23, 1992.

Joyce E. Miles, Richmond, Va., for debtor.

Clinton B. Corry, Richmond, Va., for Unsecured Creditors.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY,
Bankruptcy Judge.

This matter comes before the Court upon the objection by the Chapter 13 standing trustee (the "Trustee") to confirmation of the debtor's Chapter 13 plan of reorganization (the "Plan"). The Trustee's objection filed February 19, 1992 alleges that the plan filed February 2, 1992 does not provide for all of the debtor's net disposable income to fund the plan as required by 11 U.S.C. § 1325(b)(1)(B).

Upon consideration of arguments of counsel heard March 18, 1992 and the briefs filed by counsel subsequent thereto, the court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

The debtor filed a voluntary Chapter 13 petition in this Court on January 2, 1992. The schedules filed by the debtor represent that she is employed by Old Dominion Transit Management.

It appears to the Court, as indicated in the debtor's schedules and as subsequently verified by her testimony, that $177.54 per month is taken as a direct payroll deduction through her employer to fund a pension plan for the benefit of the debtor. The debtor's schedules reflect that the current market value of said pension plan was approximately $8,000 as of the filing of the petition.

The schedules further reflect the debtor's net monthly income after taxes as being $2,430.20. Direct monthly payroll deductions are taken for the debtor's pension fund, $177.54; an automobile loan through a credit union, $285.35; union dues, $30; and UGF, $4.33. The debtor's net monthly take home pay is $1,932.98, as stated in the debtor's schedules.

The debtor proposes to pay $814 per month into her plan over a forty-nine month period. Included in this amount are payments of $651 for the debtor's residence and $66.32, for 48 months, to cure pre-petition arrearages on the residence. The debtor's plan calls for a 10% dividend to be paid to unsecured creditors.

## CONCLUSIONS OF LAW

The Trustee's objection to confirmation was filed pursuant to 11 U.S.C. § 1325(b)(1)(B) which states in pertinent part that the court may not approve a plan unless "the plan provides that all of the debtor's projected disposable income to be received in the three year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan."

Disposable income is defined as "income which is received by the debtor and which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A).

The Court must therefore determine whether the debtor is applying all of her disposable income to the funding of the plan in light of the proposed $177.54 payment to her pension fund.

The court in *In re Festner*, 54 B.R. 532 (Bankr.E.D.N.C.1985) held that payroll deductions made to fund a retirement plan are not expenditures which are necessary for the maintenance or support of the debtor or a dependent of the debtor. Additionally, monies deducted from a debtor's paycheck to invest in a stock investment plan

have been viewed as contributions to a savings plan for the debtor's future benefit that could otherwise be used to fund the Chapter 13 plan. *In re Bruce*, 80 B.R. 927 (Bankr.C.D.Il.1987). See also *In re Ward*, 129 B.R. 664 (Bankr.W.D.Ok.1991).

The court in *Festner*, 54 B.R., at 543, found that "additional pension plans and stock purchases may be a wise investment which enhance an individual's financial security but the debtor is not entitled to acquire them at the expense of unpaid creditors."

The debtor's monthly payment into her plan is $814, of which $717.32 is paid toward the mortgage on the debtor's residence. Total payment under the plan is $39,886, of which $35,082.39 is designated to be paid toward the debt on the debtor's residence, leaving $4,803.61 for payment to other creditors over a forty-nine month time frame. The debtor would pay her unsecured creditors a dividend of only 10% while accruing an additional $8,699.46 in her pension fund over the life of the plan. The debtor would therefore be paying to herself, through the pension fund, more than 55% more than she intends to pay her non-mortgage creditors under her plan. When added to the present worth of the pension fund the debtor would then have, without allowing any adjustment for growth or loss, an apparent exemption of over $16,000 and at the same time accruing additional equity in her residential real estate.

The Court finds that the $177.54 contribution to the debtor's pension fund is not necessary for the maintenance or support of the debtor as required by 11 U.S.C. § 1325(b)(2)(A) and therefore constitutes disposable income and, as such, it is not being used to make payments under the plan in conformity with 11 U.S.C. § 1325(b)(1)(B).

■ Although the fair and equitable test imposed in Chapter 11 does not appear in Chapter 13, because creditors are not privileged to vote on a Chapter 13 plan, the court is charged with determining whether the plan was proposed in good faith and not by any means prohibited by law. 11 U.S.C. § 1325(a)(3). The debtor previously filed a Chapter 13 petition on October 4, 1990. A plan was confirmed in that case on March 14, 1991. That plan has not yet been consummated nor has that case been dismissed. The debtor's employer was subject to a wage assignment order under that case as well as a similar order entered in this proceeding. The employer is the same in both cases. The prior wage assignment order has never been terminated. This Court can only assume that the employer is complying only with the order entered in this case. The prior case reflects a wage deduction of $29.88 each week for pension contributions. The present case reflects a pension contribution of $177.54 monthly. The plan in the prior case indicated a 100% dividend to unsecured creditors in event of liquidation under Chapter 7. The present plan provides for a 10% payment to unsecured creditors and states that in liquidation there would be no distribution to unsecured creditors in Chapter 7.

The plan in the prior case was filed November 13, 1990. Plan payment was to commence 30 days thereafter. The present plan calls for 49 payments. The total elapsed time for both plans exceeds 60 months. The filing of the second Chapter 13 proceeding without previously dismissing the prior case allows the debtor to exceed the maximum 60 month limitation.

■ As stated, the second petition was filed at the time an active Chapter 13 case was before the Court. Although there is no express language in the Bankruptcy Code (11 U.S.C.) that proscribes such action, this Court considers it an abuse of process for any debtor to have more than one proceeding in bankruptcy at the same time. To allow otherwise could or would orchestrate continuing injunctions against parties seeking relief under 11 U.S.C. § 362, confuse and possibly prejudice creditors, create repetitive litigation, as well as create consternation, as is reflected in this proceeding. This Court cannot find this plan to have been filed in good faith under 11 U.S.C. § 1325(a)(3).

Finally, it is to be noted that Gerson's Furniture Company filed an objection to

confirmation of the plan. A hearing on its objection was conducted subsequent to the subject hearing. At that time, the Court concluded that the objections taken by Gerson's Furniture Company should be sustained.

For these reasons the Court finds that the Trustee's objection to confirmation of the debtor's Chapter 13 plan should be sustained.

An appropriate order will issue in conformity with this opinion.