**In re John and Paula GOEWEY, Debtors.**

**Bankruptcy No. 95–11063.**

United States Bankruptcy Court, N.D. New York.

Aug. 21, 1995.

---

Martin J. Goodman, Albany, NY, for debtors.

Solomon and Solomon, P.C. (Douglas M. Fisher, of counsel), Albany, NY, for State Employees Federal Credit Union.

Andrea E. Celli, Chapter 13 Standing Trustee, Albany, NY.

## MEMORANDUM–DECISION AND ORDER

JOHN J. CONNELLY, Bankruptcy Judge.

This matter is before the Court by way of objections filed by the Chapter 13 Trustee ("Trustee") and State Employees Federal Credit Union ("SEFCU") to confirmation of the Chapter 13 plan filed by John Goewey and Paula Goewey ("Debtors").

### FACTS

The Debtors filed their petition seeking relief under Chapter 13 on March 23, 1995 ("petition date"). As of their petition date the Debtors were having the monthly sum of $121.33 deducted from their pay in order to repay an advance (referred to by the parties as a "retirement loan") which they received from New York State and Local Employees' Retirement System ("NYSLERS"). The loan proceeds constitute a portion of Debtors' retirement contributions. Debtors were also obligated on an unsecured student loan in the amount of $1,824.

In their plan Debtors propose, *inter alia*, to continue to pay outside the plan (as an expense) the monthly sum of $121.33 to NYSLERS while funding their repayment plan by remitting to the Trustee the monthly sum of $177.68. The plan provides for a 10% distri-

bution on all unsecured claims other than the retirement and student loan. Debtors also propose to pay 100% of their student loan inside the plan. In effect, the Debtors propose to pay 100% of the NYSLERS and student loan unsecured claims, but only 10% of all other unsecured claims.

The Trustee objects to confirmation of the plan on the grounds that the Debtors' monthly payment to NYSLERS in the amount of $121.33 constitutes a failure to fund all of their disposable income into the plan in violation of Code § 1325(b)(1)(B). SEFCU objects on the same grounds. It argues that the Debtors are using their post-petition disposable income to increase their exempt assets at the expense of the unsecured creditors.

A hearing was conducted on June 29, 1995 at which SEFCU appeared and also objected to the Debtors' proposal to separately classify the student loan and pay it in full while paying only 10% on other unsecured claims.

The Debtor asserts in response that, in addition to the tax consequences triggered by their failure to repay their retirement loan, they have no control or discretion over this income because they are compelled to repay the retirement loan and NYSLERS refuses to cease the automatic payroll deduction.

## DISCUSSION

### a) Retirement Loan

■ The issue is whether the monthly sum in the amount of $121.33 deducted by NYSLERS from the Debtors' wages constitutes disposable income within the meaning of Code § 1325(b)(2).

Generally, under Code § 1325(b)(1)(B) a debtor is obligated to fund his Chapter 13 plan with all of his projected disposable income. Where a debtor is not engaged in business (which is the case here), the Code defines "disposable income" as income "which is not reasonably necessary to be expended for the maintenance or support of the debtor

or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A). Unfortunately, "[t]he legislative history gives little guidance as to what is meant by [disposable income]." 5 King, COLLIER ON BANKRUPTCY ¶ 1325.08[4][b] (15th ed. 1995).

A review of the case law reveals a case-by-case approach. *In re Colon Vazquez*, 111 B.R. 19 (Bankr.D.P.R.1990) the court ruled that the monthly deduction from the debtor's wages in the amount of $30.40 was not disposable income based upon its finding that the monthly deduction was "compulsory and a condition" of debtor's continued employment. *Id.* at 20. Here, although the Debtors assert that they have no control over that portion of their wages and that NYSLERS refuses to cease the monthly wage deduction, the statute cited by the Debtors refutes their contention.

Subsection (c) of § 517–c of the New York Retirement and Social Security Law (cited by Debtors) permits payments on retirement loans either through payroll deduction or directly to the retirement board. Thus, the statute would appear to permit discontinuance of the Debtors' payroll deduction. In addition, Debtors' instant payroll deduction is distinguishable from *In re Colon Vazquez* in that it is not a condition of employment. It therefore appears that the Debtors' post-petition income which has been deducted from their wages for the purpose of repayment of their retirement loan is "disposable income" under Code § 1325(b)(2). Accordingly, that portion of Debtors' income should be remitted monthly to the Trustee to fund their plan.

■ Moreover, the Debtors' obligation to repay their retirement loan is not a "debt" which gives rise to a right to payment. See *In re Villarie*, 648 F.2d 810, 812 (2d Cir. 1981). The statutory framework also acknowledges that such retirement "loans" actually constitute a use of the borrower's own contributions, rather than a lending of additional funds.[1] By statute, NYSLERS's sole remedy upon the Debtors' default is to offset the amount then outstanding from Debtors'

---

1. Under § 517–c(b), the total amount of the "loan" may not exceed 75% of the actual contri-    butions of the "borrower."

account or other benefits payable. See § 517–c(*l* ). "The retirement board shall have no right to bring suit in any court against any member to enforce the amount due...." *Id.* By operation of law the retirement board does not possess an allowable "claim" based upon the unpaid amount of Debtors' retirement loan. As a result, it is not entitled to a distribution through the Debtors' plan.

The failure of Debtors' plan to comply with Code § 1325(b)(1)(B) warrants denial of confirmation.

### b) Student Loan

The issue is whether the Debtors' proposal to separately classify and pay 100% of their student loan can pass muster in view of the Debtors' proposal to pay 10% of all other unsecured claims. The Debtors assert that separate classification and treatment is permissible due to the fact that the student loan claim is nondischargeable.

Separate classification of unsecured claims is permitted under Code § 1322(b)(1) to the extent "provided in section 1122" but such classification may not "discriminate unfairly against any class so designated." The Court also notes that while student loan debt is nondischargeable pursuant to Code § 1328(a)(2), Congress did not prohibit modification of student loan claims as it did in Code § 1322(b)(2) concerning claims secured only by real property which serves as a debtor's principal residence. Thus, although separate classification may be permissible, the mere nondischargeable nature of the student loan obligation is not sufficient justification, in itself, to warrant the unfair treatment of other unsecured creditors proposed here.

The Debtors' proposal to pay 100% of their student loan but only 10% of their other unsecured claims appears to discriminate unfairly against Debtors's unsecured creditors. Although student loans are nondischargeable, they do not possess the same fundamental societal importance as nondischargeable child support or maintenance. There appears to be little justification for the disparate treatment of unsecured creditors except to, in effect, force the other unsecured creditors to finance Debtors' education. The Court finds that Debtors' proposal to pay 100% of their unsecured student loan but only 10% of their other unsecured claims unfairly discriminates against the general unsecured class in violation of Code 1322(b)(1).

For the above stated reasons, it is **ORDERED** that confirmation of the Debtors' plan be and hereby is **denied.**