**In re Anthony D. DELNERO, Dawn M. Delnero, Debtors.**

**Bankruptcy No. 95–61473.**

United States Bankruptcy Court, N.D. New York.

Jan. 5, 1996.

Mark Swimelar, Chapter 13 Trustee, Syracuse, New York.

Thomas, Collison & Meagher (Robert F. Whalen, of counsel), Endicott, New York, for Debtors.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

The Court considers herein the objection of Mark W. Swimelar, Esq., Chapter 13 trustee ("Trustee") to confirmation of the Chapter 13 plan of Anthony D. Delnero ("A. Delnero") and Dawn M. Delnero ("D. Delnero") (hereinafter jointly referred to as "Debtors") filed on May 1, 1995, and subsequently modified on or about July 19, 1995. As the

modification was not properly noticed pursuant to Local Rule 315.3(c), which requires twenty days notice prior to the date fixed for the hearing on confirmation, the hearing originally scheduled for July 26, 1995, was adjourned to August 30, 1995, in Utica, New York. Following oral argument on August 30, 1995, the parties were afforded an opportunity to file memoranda of law. The matter was submitted for decision on October 2, 1995.

## JURISDICTIONAL STATEMENT

The Court has core jurisdiction over the parties and subject matter of this contested matter pursuant to 28 U.S.C. §§ 1334, 157(a), (b)(1), and (b)(2)(L).

## FACTS

On May 1, 1995, the Debtors filed a joint voluntary petition ("Petition") seeking relief pursuant to Chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Included with the Petition was a copy of the Debtors' proposed Chapter 13 plan which proposed to pay $150 per month to the Trustee over a period of 60 months. The plan stated that unsecured creditors were to receive a 57% dividend. On July 19, 1995, the Debtors filed a modified plan ("Modified Plan") correcting what Debtors' counsel described as a typographical error and providing that unsecured creditors were actually to receive a 16% dividend.

According to Schedule I, included with Debtors' Petition, their monthly net income, after deductions, was listed as $2,487.07. The Amended Schedule I, attached to the Debtors' Modified Plan, listed a monthly net income of $4,230. In response to a letter from the Court, dated December 12, 1995,[1] on or about December 21, 1995, Debtors provided the Court with a second amended

Schedule I, dated December 19, 1995 ("Second Amended Schedule I"), which shows monthly net income of $3,723.46.

According to the Second Amended Schedule I, A. Delnero's gross salary is $4,391.68. The itemization furnished to the Court with respect to the various deductions made in calculating his net monthly take home pay of $2,873.46 shows the following:

| | |
|---|---|
| Federal Income Tax | $ 279.40 |
| FICA/Medicaid | 330.96 |
| SUI Tax | 4.84 |
| Pennsylvania Income Tax | 122.96 |
| New York Income Tax | 122.02 |
| Athen Tax | 43.92 |
| Pretax Basic Retirement Contribution [2] | 263.50 |
| Repayment of Loan from Retirement Account (Loan 1) | 111.94 |
| Repayment of Loan from Retirement Account (Loan 2) | 136.52 |
| Life Insurance | 3.72 |
| Long Term Disability Insurance | 32.94 |
| Medical Insurance | 53.00 |
| Dental Insurance | 12.50 |
| | $1,518.22 |

In addition to the monthly take home pay of $2,873.46, Debtors have included $850 in rental income from property owned by the Debtors and located at 25 Cherry Street, Johnson City, New York,[3] for a total income figure of $3,723.46.

According to Schedule J, included with Debtors' Petition, monthly expenses were estimated to be $2,179.83. Schedule J was amended on July 19, 1995, to include expenses associated with the Cherry Street property, totalling $1,102 per month, as well as a "Citicorp mortgage" in the amount of $296.15, for total monthly expenses of $4,005.65. Schedule J, as amended December 19, 1995 ("Second Amended Schedule J"), shows monthly expenses of $3,565.57.

In proposing to make monthly payments of $150 per month to the Trustee for a 16% dividend to unsecured creditors, the Debtors have calculated their "excess monthly income" as follows:

1. The Court requested an itemization of the deductions noted in the Amended Schedule I for clarification purposes.

2. As an employee of Ingersoll–Rand Company, A. Delnero is eligible to make voluntary contributions to the Ingersoll–Rand Savings and Stock Investment Plan ("Retirement Plan"). According to Debtors' Amended Schedule C, they identify $3,000 in "Anthony's Retirement Plan" and $16,000 in "Anthony's Savings & Investment Ac-

count." As the Court has not been provided with any evidence with which to distinguish the two, for purposes of this decision, the Court will simply refer to both as the "Retirement Account."

3. According to Debtors' Petition, A. Delnero also owns several other pieces of real property for which no income was listed on Schedule I (see Schedule A of Debtors' Petition).

|         | Schedule J | Amended Schedule J | Second Amended Schedule J |
|---------|-----------|--------------------|---------------------------|
| Income  | $2,487.07 | $4,230.00          | $3,723.46                 |
| Expenses| 2,179.83  | 4,005.65           | 3,565.57                  |
| Excess Income | $ 307.24 | $ 224.35      | $ 157.89                  |

## DISCUSSION

■ Debtors correctly point out that Code § 1325(a) requires that with respect to each allowed unsecured claim, the plan must provide that the value of the property to be distributed on account of such claim is not less than the amount that would have been paid if the Debtors elected to liquidate under Chapter 7 of the Code. Debtors contend that since they have "proposed to pay substantially more to unsecured creditors than they would receive in any Chapter 7 liquidation," the Modified Plan should be confirmed. However, "whether or not the unsecured creditors are receiving more under the plan than they would under a chapter 7 case is not a part of the requirement of [Code] § 1325(b)." *In re Festner,* 54 B.R. 532, 534 (Bankr.E.D.N.C.1985).

■ Code § 1325(b)(1)(B) prohibits the Court from approving a plan if there is an objection by the Trustee or an unsecured creditor to its confirmation based upon the plan's failure to provide that all of the Debtors' disposable income is being committed to payments under the plan. *See In re Cornelius,* Case No. 95–60782, slip op. at 7 (Bankr. N.D.N.Y. December 5, 1995); *see also In re Harshbarger,* 66 F.3d 775, 777 (6th Cir.1995). Code § 1325(b)(2) defines "disposable income" as that "which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor." *Id.*

■ In addressing the issue of disposable income and the requirement of Code § 1325(b)(1)(B), the Court notes that according to the Debtors' Second Amended Schedule I, deductions from A. Delnero's gross salary include a monthly contribution of $263.50 to the Retirement Account. This particular deduction was identified in the original Schedule I as "Pretax basic" and categorized as "Other deductions." The Trustee's objection to the Debtors' Plan was limited to the deductions for the repayment of two loans from the Retirement Account. However, having received clarification that "Pretax basic" is not a deduction for basic medical coverage, as the Trustee could reasonably have assumed from reading the Debtors' original Schedule I, but is actually a retirement contribution, the Court deems it appropriate *sua sponte* to address whether the $263.50 contribution should be included in calculating the Debtors' disposable income.

■ In a recent decision, this Court concluded that contributions to pension plans and/or savings plans, as long as they are not mandatory, are to be included in a debtor's income for purposes of calculating disposable income. *Cornelius, supra,* slip op. at 8; *see also Festner, supra,* 54 B.R. at 533 (Contributions to a voluntary retirement program may enhance a debtor's financial security but "the debtor is not entitled to acquire them [pension plans] at the expense of unpaid creditors."); *In re Fountain,* 142 B.R. 135, 137 (Bankr.E.D.Va.1992) (Contributions to a pension fund constitute disposable income.). *In re Cavanaugh,* 175 B.R. 369, 373 n. 3 (Bankr.D.Idaho 1994) (Voluntary contributions to retirement plans are not necessary for the maintenance and support of the debtor and contributions are income for purposes of Code § 1325(b)). According to the description of the Retirement Plan provided to the Court in response to its letter of December 12, 1995, A. Delnero's contributions are voluntary and he may suspend them at any time. Therefore, the $263.50 in monthly contributions to the Retirement Account should be included in any determination of disposable income.

■ The Court next focuses on the deductions identified by the Debtors in the Second Amended Schedule I as repayment of two loans from the Retirement Account in

the amount of $248.46. Debtors assert that the Retirement Account is to be accorded special status under the New York Debtor and Creditor Law "as a spendthrift trust exempt from execution." Initially, the Court notes that the fact that the property may be exempt under state law does not prevent it from being included as disposable income of the Debtor. *See In re Hagel,* 184 B.R. 793, 797 (9th Cir. BAP 1995). While exemptions in a Chapter 7 case are intended to provide a debtor with the basic necessities of life, in a Chapter 13 case a debtor is allowed to keep all his/her assets, whether or not they are exempt. *Id.* at 796. The debtor is permitted to retain sufficient income to meet reasonable and necessary expenses in exchange for the repayment of debts out of future disposable income, including income from an exempt source. *Id., see also In re Minor,* 177 B.R. 576 (Bankr.E.D.Tenn.1995); *In re Morse,* 164 B.R. 651 (Bankr.E.D.Wash.1994); *In re Schnabel,* 153 B.R. 809 (Bankr.N.D.Ill.1993).

However, Code § 541(c)(2) does exclude a debtor's interest in a trust that is subject to a restriction on transfer enforceable under applicable nonbankruptcy law from property of the estate. *Harshbarger, supra,* 66 F.3d at 777. Assuming that the Retirement Account is a qualified trust under § 401(a) of the Internal Revenue Code, as Debtors have asserted, the Court agrees with the Debtors that the contributions made by them into the Retirement Account prior to filing their Petition are not property of the bankruptcy estate.

Debtors contend that this exclusion should also apply to the monies borrowed by the Debtors from the Retirement Account prepetition, which are now being repaid through deductions from A. Delnero's salary. The debtor in *Harshbarger* made a similar argument to the bankruptcy court. The bankruptcy court concluded that postpetition payments on a loan borrowed from a qualified retirement account were to be treated as disposable income and, accordingly, denied confirmation of the debtor's plan because it failed to comply with Code § 1325(b)(1). Both the District Court and the Court of Appeals for the Sixth Circuit affirmed the bankruptcy court's decision.

The Court of Appeals in *Harshbarger* made no mention in its discussion of whether the deductions from the debtor's wages were compulsory or in any way a condition of the debtor's employment, other than indicating that there was a right of setoff against the debtor's account in the event that she failed to repay the loan. This Court must, as an initial matter, consider whether the deductions from A. Delnero's wages in connection with the repayment of the two loans from the Retirement Account are compulsory and a condition of A. Delnero's employment. *See In re Goewey,* 185 B.R. 444, 446 (Bankr.N.D.N.Y.1995) (Connelly, B.J.) (citing *In re Colon Vazquez,* 111 B.R. 19 (Bankr.D.P.R.1990)). In *Goewey,* the debtors asserted that they had no control over the monthly wage deductions being made to repay a loan from their retirement funds. The court made the finding that the wage deductions were was not a condition of the debtors' employment and concluded that the monies should be included in the debtors' disposable income. *Id.*

In the matter presently before the Court, the Debtors provided the Court with a letter from A. Delnero's employer, dated July 18, 1995, stating that repayment was mandatory and that an *employee* (emphasis added) cannot make a request to stop the payroll deductions. *See* Exhibit "B" attached to Debtors' Response to Trustee's Objection to Confirmation filed July 21, 1995. The letter does not indicate that repayment is a condition of A. Delnero's employment. While the letter indicates that an employee cannot make a request to stop the deductions, the Court is not precluded from ordering the employer to cease said deductions.

Debtors have asserted that if A. Delnero's employer is compelled to cease the deductions for the loans that the Debtors will be subject to taxation and penalties for early withdrawal of the monies. It is unclear whether such an order would result in tax consequences for the Debtors. According to the terms of the Retirement Plan, there appears to be a distinction made between "withdrawal" of the funds, which would result in a tax penalty, and "borrowing" the

funds and failing to repay them in full within the five year period specified in the terms of the Retirement Plan. In any event, the fact that the Debtors may incur certain tax liability if the employer is required to cease making the deductions does not alter the Court's position that the deductions for the repayment of the loans are to be included in the Debtors' disposable income. *See In re Scott,* 142 B.R. 126, 135 (Bankr.E.D.Va.1992) ("Court finds that the debtor may not avoid such [tax] liability and hardship to the detriment of his creditors.")

The Debtors have also suggested that the Court consider the loans as secured. In this regard, Debtors contend that in proposing to repay the loans in full they are merely reaffirming the debt. However, as Debtors' counsel asserted at the hearing on August 30, 1995, Debtors' obligation to repay the loans is not a "debt." *See Goewey, supra,* 185 B.R. at 446 (citing *In re Villarie,* 648 F.2d 810, 812 (2d Cir.1981)). The loans "actually constitute a use of the borrowers' own contributions, rather than a lending of additional funds." *Id.; see also In re Jones,* 138 B.R. 536, 538 (Bankr.S.D.Ohio 1991); *Scott, supra,* 142 B.R. at 131. The fact that the monies are to be deducted from A. Delnero's paychecks in repaying the loan is not sufficient to afford the loans secured status. *Id.* at 132.

The Court concludes, as did the bankruptcy court in *Harshbarger,* that the deductions for repayment of the two loans to the Retirement Account are also to be included in the Debtors' disposable income. To hold otherwise would convey a message to debtors contemplating bankruptcy that they may borrow against their retirement funds prepetition and then insulate the repayment of those monies from their creditors postpetition. *Jones, supra,* 138 B.R. at 539.

Based on the foregoing, it is

ORDERED that the confirmation of the Debtors' Modified Plan is denied on the basis that it fails to comply with Code § 1325(b)(1)(B); and it is further

ORDERED that the Debtors shall file and serve a second modified Chapter 13 plan, together with a notice of confirmation hearing, within thirty (30) days of the date of this Order, or Debtors' case will be dismissed upon separate order submitted by the Trustee.