**In re Richard Roy MacDONALD, Belkys A. MacDonald, Debtors.**

**Bankruptcy No. 97–33968DAS.**

United States Bankruptcy Court, E.D. Pennsylvania.

June 24, 1998.

John L. McClain, Philadelphia, PA, for Debtors.

John D. Sheehan, Malvern, PA, for Mellon Bank, N.A.

Richard Roy, Belkys A. MacDonald, Quakertown, PA, Debtors.

Edward Sparkman, Philadelphia, PA, Standing Chapter 13 Trustee.

*OPINION*

DAVID A. SCHOLL, Chief Judge.

*A. INTRODUCTION*

█ The instant contested matter illustrates the importance of utilizing proper procedures in raising, litigating, and briefing issues, specifically an objection to confirmation of a Chapter 13 plan on the grounds of 11 U.S.C. § 1325(b)(1)(B). As to the procedural issues presented, we decide that we can only consider the substantive § 1325(b)(1)(B) issues raised by timely written objection; that we must sustain the timely-raised aspects of the objection as to which the Debtors failed to meet their burden of proving lacked merit at the confirmation hearing; and that we cannot consider evidentiary material nor substantive objections presented for the first time in the parties, post-hearing briefs.

The particular matter before us is an objection to confirmation of the Debtors' Chapter 13 plan ("the Plan") filed by Mellon Bank, N.A. ("Mellon"), claiming that the Debtors did not apply all of their projected "disposable income" to payments under the Plan because they contemplated making full $316 monthly repayments on loans taken from their retirement plans and $175 monthly parochial school tuition payments for their 12–year–old son, while paying unsecured creditors only a small portion of their claims under the terms of the Plan. In their post-hearing brief Mellon also objected to the Debtors' expenditure of $150 "monthly financial support to mother." The Standing Chapter 13 Trustee, Edward Sparkman ("the Trustee"), joined in Mellon's objection to Debtors' loan repayments and their payments to the mother, but expressed no objection to the Debtors' tuition payments.

We conclude that the objection to the payments on behalf of the mother are untimely and cannot be considered. However, we find that the Debtors failed to prove in the record made at the confirmation hearing that the $316 per month used to repay loans taken from each of their retirement accounts and $175 per month used for parochial school tuition did not constitute disposable income available to unsecured creditors. Since we must deny confirmation and the instant hearing was the third listing of the confirmation hearing, we will give the Debtors only one additional opportunity to prepare a confirmable plan or face dismissal of their case.

*B. PROCEDURAL AND FACTUAL HISTORY*

RICHARD ROY MacDONALD and BELKYS A. MacDONALD ("the Debtors") filed the underlying joint Chapter 13 bankruptcy case, along with the Plan and all necessary schedules and statements, on November 14, 1997. The total of their unsecured nonpriority claims was $32,315.00, including two overdue accounts with Mellon, with balances of $3,467.91 and $2,622.38, or a total of $6,090.29, owed to Mellon as of their filing date. Mellon estimates that it will be distributed only about twelve (12%) percent of its claim under the Plan.

By notice sent on November 14, 1997, to all creditors the first meeting of creditors in this case was scheduled on December 29, 1997, but, apparently due to the holidays, was in fact held on January 5, 1998. On January 21, 1998, Mellon filed the objection to confirmation of the Plan before us. The Debtors made no amendment to the Plan or their Schedules in the interval of over two months between the filing of the objection and the first scheduled confirmation hearing of March 26, 1998. On the latter date, the confirmation hearing was continued without objection to April 30, 1998. On March 31, 1998, the Trustee filed a motion to dismiss

the case ("The TMTD") on the ground that the Plan was infeasible, without further elaboration, and a hearing on the TMTD was also scheduled on April 30, 1998. On April 30, 1998, both hearings were again continued without objection until May 28, 1998, with again no amendments to their Plan or other papers filed by the Debtors.

The Debtors appeared with their counsel at the confirmation hearing on May 28, 1998. Mellon argued the merits of its objection to confirmation. Overcoming an initial reluctance to present any evidence, counsel for the Debtors ultimately called the Husband–Debtor ("the Husband") as the only witness at the brief confirmation hearing.

The Husband testified that the Debtors were both employees of "Moyer Packing, Rendering Division" and that both had established "pension 401(k) plans" through their employer. He further testified that he and his wife had borrowed approximately $11,500 and $2,000, respectively, against their plans, and that the $316 monthly payments were payroll deductions credited towards the loan balances. In response to the court's request for any available documentation, the Debtors produced documents reflecting their investments of $30,447.07 and $14,152.67 in their respective "MOPAC EMPLOYEES PROFIT SHARING 64252–001" plans and a "Plan Loan Addendum" which proposed to answer certain questions about the terms of a "plan loan." Although the latter document stated that a loan was "secured by an assignment of fifty (50%) percent of the present and future balance of the Borrower's vested interest in his account(s) under the Plan," the Husband was unable to state with certainty whether the plan administrator was entitled to take funds out of the Debtors' retirement accounts to make up payments if they failed to make any payments on the loans.

With respect to the expense for schooling, the Husband testified that the Debtors had three children aged two, four, and 12 years. In explanation of the private school expense for the Debtors' 12–year–old son, the Husband initially stated only that "I'm Catholic and I want him to go to a Catholic school." However, further testimony indicated that the son's schooling arrangement was less

ordinary than this brief explanation would have made it appear. The Debtors reside in rural Bucks County, Pennsylvania, near Quakertown. The son, meanwhile, attends school in New York City, where he lives with the Wife–Debtor's relatives most of the year. The Husband raised no claim of any deficiency in the public schools available to him, nor did he indicate any attempt to locate a local Catholic school.

At the close of the hearing, we accorded the Debtors and Mellon an opportunity, and requested the Trustee, to simultaneously submit briefs addressing the § 1325(b)(1)(B) issues raised by Mellon on or before June 12, 1998. All three briefs were timely filed, but all sought, in varying degrees, to improperly embellish the meager record created at the hearing.

Least offensive was Mellon, which basically applied the law to the two issues raised by its objection. However, in arguing that the bankruptcy filing had not, as Mellon apparently believed that it should, altered the Debtors' lifestyle, a reference was made, for the first time, to the Debtors' ownership of three automobiles requiring a total of $312 in monthly payments and an "unexplained" expense of $150 monthly for "financial support for mother."

Most offensive were the Debtors. Attached as exhibits to their brief were loan documents not offered into evidence at the confirmation hearing. "Clearly, evidence not admitted into the record cannot be considered." *In re Blanchard,* 201 B.R. 108, 114 & n. 1 (Bankr.E.D.Pa.1996). *See also In re Cook,* 146 B.R. 934, 939 (Bankr.E.D.Pa.1992) (pro se litigant's attempt to attach "evidence" to his post-trial brief was chastised). Of course, legally-trained counsel should be well aware of the impropriety of submitting "evidence" not offered at trial as an exhibit to a brief. Further, there is an attempt to abandon the characterization of the Debtors' pension plans as § 401(k) plans, as they are identified in the schedules and as was recited by the Husband and counsel at the hearing. With respect to the son's school tuition, the brief recites, totally unsupported by the record, that the Husband "testified to his concern for the public education system in the

school district where they live and that his son was getting into trouble in that area" and that the Debtors are "devout Catholics and want their children to be educated by the Church."

Nor is the Trustee immune from this epidemic of "briefitis." While not having filed any objections himself, the Trustee argues that not only should the pension loan repayments be deemed disposable income but· also the $150 monthly payments to support the "mother," an issue not raised in even Mellon's written objection, should be so deemed as well. The Trustee "takes no position" on the school tuition question because he did not consider the amount expended for this purpose to be excessive.

## C. DISCUSSION

Resolution of the instant dispute requires an application of the foregoing facts to the applicable law, 11 U.S.C. §§ 1325(b)(1)(B), (b)(2), which provide as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the ·plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the. plan will be applied to make payments under the plan.

(2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

(A) for the maintenance or support of the debtor or a dependent of the debtor; and

(B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

A threshold issue is the observation that a § 1325(b)(1)(B) objection "must be raised by the trustee or the holder of an allowed unsecured claim ... such an objection cannot be raised *sua sponte.*" *In re Fricker,* 116 B.R. 431, 437 (Bankr.E.D.Pa. 1990). *Accord,* 8 COLLIER ON BANKRUPTCY, § 1325.08[2], at 1325–47 (15th ed. rev.1998). We note that, in *In re Fulton,* 211 B.R. 247, 255–56 (Bankr.S.D.Ohio 1997), the court effectively skirts this proscription by characterizing at least certain § 1325(b)(1)(B) issues as factors in determining the "good faith" of the debtor's plan, pursuant to 11 U.S.C. § 1325(a)(3). We consider the *Fulton* court's reasoning as a dangerous expansion of what we believe are the exclusive good faith elements of honesty in purpose and full disclosure of relevant facts. *See In re Lilley,* 201 B.R. 725, 726 (Bankr. E.D.Pa.1996); and *In re Gathright,* 67 B.R. 384, 387–90 (Bankr.E.D.Pa.1986), *appeal dismissed,* 71 B.R. 343 (E.D.Pa.1987). Hence, we follow our *Fricker* reasoning that, if the trustee or an unsecured creditor does not properly raise a particular § 1325(b)(1)(B) objection, we cannot consider it.

This court has promulgated Local Bankruptcy Rule 3020.1, which establishes the manner by which, and the time in which, objections to confirmation must be filed as follows:

**L.B.R. 3020.1 FILING OF OBJECTIONS TO PLANS OR MODIFIED PLANS IN CHAPTER 12 OR CHAPTER 13 CASES**

Any objections to confirmation of a debtor's Chapter 12 or Chapter 13 plan or modified Chapter 13 or Chapter 13 plan *shall be filed in writing and served* upon the debtor, the debtor's counsel, and the trustee within twenty-five (25) days after the meeting of creditors pursuant to 11 U.S.C. § 341 has been concluded, or within twenty-five (25) days after notice of the filing of the plan or modified plan as required by L.B.R. 3015.1 and L.B.R. 3019.1(a), whichever is later (emphasis added).[1]

---

**1.** The proposed amendments to this court's Local Bankruptcy Rules would revise the statement of

the procedure for filing objections to confirmation as follows:

■ Since § 1325(b)(1)(B) objections cannot be raised *sua sponte*, and the procedure for interested parties to raise such objections requires a prior notice of same to the debtors, *inter alia*, in writing, we believe that it is inappropriate for the court to consider § 1325(b)(1)(B) objections which are not timely filed in writing. We further emphasize that the statute and Rule obviously apply to the Trustee as well as to creditors. Therefore, the Trustee may not, formally or informally, raise oral § 1325(b)(1)(B) objections for the first time at the confirmation hearing or at any time.

■ The reason for strict enforcement of the procedure for asserting § 1325(b)(1)(B) objections is not a mere technical nicety, but arises from the manner in which the burden of proof for deciding such objections is allocated. Although the objecting party has the initial burden of filing objections which reasonably assert that the debtor is not applying all disposable income to plan payments, the burden of proving compliance of the plan of the provisions with § 1325(b)(1)(B) lies upon the debtor, as the party who is attempting to assert a right to a legal position and is the party with the most access to evidence of the debtor's own budget. *See In re Rothman*, 206 B.R. 99, 104 (Bankr.E.D.Pa.1997) ("*Rothman II*"); and *Fricker, supra*, 116 B.R. at 437, both citing *In re Fries*, 68 B.R. 676, 683–85 (Bankr.E.D.Pa.1986) (FOX, J.). It is difficult or impossible for a debtor to come to a confirmation hearing prepared to meet this burden if the debtor is unaware of precisely what objections are before the court.

In the instant case, Mellon filed a timely § 1325(b)(1)(B) objection confined to the Debtors' retirement loan repayments and parochial school tuition payments. The Trustee filed no objections whatsoever. While we have no difficulty with the Trustee's joining or advocating the merits of aspects of Mellon's timely § 1325(b)(1)(B) objection, we do have difficulty with Mellon's and the Trustee's attempts to articulate § 1325(b)(1)(B) is-

sues which were never filed by any party. Nevertheless, in their post-trial briefs, Mellon and particularly the Trustee objected to the Debtors' $150 expense to support one of the Debtors' mother, and Mellon further appears to attempt to assert an objection to the Debtors' $312 total car payments. Since neither Mellon nor the Trustee filed objections raising these issues by timely written objections, these issues will not be considered by us as bars to confirmation.

We further note that Mellon filed the only written objections to confirmation of the Plan on January 21, 1998. The Debtors, in the subsequent period of over four months from the filing of these objections to the confirmation hearing of May 28, 1998, never amended their plan.

We are dismayed by the leisurely pace of the confirmation process in which all of the interested parties acquiesced. Certainly, Mellon and the Trustee had ample opportunity to file any and all pertinent objections. The parties had months to attempt to resolve any continuing disputes. There is no reason why the confirmation hearing of May 28 could not have been conducted just as easily on March 26, 1998, on the issues before us. We cannot understand how the Debtors could be ill-prepared, as they apparently were, to attempt to meet their burdens at the confirmation hearing when it was finally conducted on May 28, 1998. Thus, it is difficult to excuse the Debtors' extremely brief and confusing testimony, which counsel recognized as so inadequate as to prompt his appending to his brief "evidence" and "testimony" not admitted of record and of course inaccessible for opposing counsel to counter. As a result, the Debtors were inexcusably unable to overcome either of the properly-filed objections to confirmation in what is properly in the record before us.

In *In re Rothman*, 204 B.R. 143, 156–57 (Bankr.E.D.Pa.1996), *reconsideration denied for the most part*, 1997 WL 9994 (Bankr.

---

*(c) Objection to Confirmation.* An objection to confirmation of a debtor's chapter 12 or chapter 13 plan *shall be filed and served* on the debtor, the debtor's counsel, the trustee, and the United States Trustee no later than five (5) days before the date of the hearing on confirmation of the

plan or modified plan, unless the court otherwise permits. Proposed Local Bankruptcy Rule 3015–1(c) (emphasis added).

This amendment is not intended to change the requirement that objections must be in writing.

E.D.Pa. January 7, 1997) (*"Rothman I "*), we allied ourselves with the majority view that the disposable income test of § 1325(b)(1)(B) requires a determination that a challenged expenditure is reasonably necessary for the support or maintenance of the debtor and the debtor's dependents, as opposed to merely examining whether the debtor uses all of the debtor's disposable income to fund a Chapter 13 plan and relegating the reasonable necessity of expenditures to an aspect of the good faith requirement of 11 U.S.C. § 1325(a)(3). As we indicated at page 73 *supra,* we believe that the minority view imposing a good faith analysis improperly expands the proper focus of § 1325(a)(3) and cannot be used to improperly disregard the ban on *sua sponte* § 1325(b)(1)(B) objections.

▇ We will now proceed to analyze the objection of Mellon to the Debtors' repayment of loans borrowed against their retirement plans. "[D]isposable income is defined as income received by the debtor that is not reasonably necessary for the support of debtor or his dependants," *In re Carter,* 205 B.R. 733, 735 (Bankr.E.D.Pa.1996), citing 11 U.S.C. § 1325(b)(2)(A). Considered among a debtor's income available to creditors for plan payments are expenditures for "luxury goods or services." *Compare* 11 U.S.C. § 523(a)(2)(C). "[T]he primary intent of the definition of disposable income is to prevent large expenditures by chapter 13 debtors on luxury goods and services which cause holders of unsecured claims to receive reduced payments." 8 COLLIER, *supra,* ¶ 1325.08[4][b], at 1325–52. Relevant to the instant matter is the observation that investments in pension plans are generally not viewed as being necessary expenses for the support of debtors or their dependents. *See In re Solomon,* 67 F.3d 1128, 1131–32 (4th Cir.1995); *In re Feldman,* 220 B.R. 138, 145 (Bankr.N.D.Ga.1998); *Rothman I, supra,* 204 B.R. at 157–58; *In re Cornelius,* 195 B.R. 831, 835 (Bankr.N.D.N.Y.1995); *In re Moore,* 188 B.R. 671, 675 (Bankr.D.Idaho 1995); *In re Cavanaugh,* 175 B.R. 369, 373 (Bankr.D.Idaho 1994); *In re Ward,* 129 B.R. 664, 668 (Bankr.W.D.Okla.1991); and *In re Festner,* 54 B.R. 532, 533 (Bankr.E.D.N.C. 1985).

▇ A somewhat different and more difficult question is presented here, where the payments at issues are not payments into a pension plan but instead are repayments on a loan made in some fashion from or against retirement benefits, which payments a debtor wishes to continue to make in order to allow retirement benefits previously contributed to remain intact. Most courts have held that such payments constitute disposable income to which unsecured creditors are entitled. *See In re Harshbarger,* 66 F.3d 775, 778 (6th Cir.1995); *In re Anes,* 216 B.R. 514 (Bankr. M.D.Pa.1998); *Fulton, supra,* 211 B.R. at 256–58; *In re Delnero,* 191 B.R. 539, 543 (Bankr.N.D.N.Y.1996); *In re Goewey,* 185 B.R. 444, 446–47 (Bankr.N.D.N.Y.1995); *In re Scott,* 142 B.R. 126, 130–35 (Bankr.E.D.Va. 1992); and *Festner, supra,* 54 B.R. at 533.

Some of the foregoing courts have based their results partially on the conclusion that they do not consider obligations to repay loans made against retirement plans to be "debts" that give rise to payment because they are, in substance, advances from the debtor's own retirement fund which will merely be deducted therefrom upon default. *See Delnero, supra,* 191 B.R. at 544; *Goewey, supra,* 185 B.R. at 446; *Scott, supra,* 142 B.R. at 132 (Bankr.E.D.Va.1992), all citing *In re Villarie,* 648 F.2d 810 (2nd Cir.1981). According to these courts, since any amount not repaid to a debtor's retirement plan would merely be offset from the debtor's future benefits, the plan administrator has no right to immediate repayment. Thus, they reason that these obligations are neither a "claim" nor a "debt," since nothing is really "owed" to the pension plan, and that therefore these repayments are not reasonably necessary and must be considered part of a debtor's disposable income.

However, a recent decision arising out of the Second Circuit, where *Villarie* is controlling, *In re Buchferer,* 216 B.R. 332 (Bankr. E.D.N.Y.1997), reaches a conclusion contrary to this weight of authority. The *Buchferer* court holds that the broad definition of "claim" recognized by the Supreme Court in *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), effectively overrules *Villarie.* 216 B.R. at 335–37,

340–41. In so concluding, the *Buchferer* Court notes that, although payments contemplated to be made on the loan against retirement funds in the plan before it could be offset against the debtors' retirement plan, a default does provide the plan administrator with some recourse, *i.e.*, collection of collateral directly from the debtors' account. *Id.* at 337–40. This state of affairs is held to establish an "indebtedness" between the debtors and the plan administrator, such that the plan administrator has a claim against the debtors. *Id.* The *Buchferer* court therefore finds that the loan at issue is not simply an advance from the debtors' own retirement account because the plan administrator has recourse against the debtors, thus creating a debt. *Id.* The *Buchferer* court then goes on to reason that the debt at issue is a "nonrecourse secured claim" which the debtors were entitled to prioritize relative to general unsecured claims. *Id.* at 342–43.

We find considerable merit in the reasoning of *Buchferer*. A debtor's loans from a retirement plan certainly appear to us to constitute a "debt" or "claim." Such claims do appear in some sense secured and thus entitled to different treatment than unsecured claims.

However, we have considerable difficulty in concluding that the Debtors have presented a record here which supports the same result that was reached in *Buchferer*. At the instant hearing, the Husband expressed uncertainty as to what, if any, rights the retirement plans of the Debtors had to execute against their assets in the event of their defaults.[2] The "Plan Loan Addendum" offered at the present hearing did little to settle the issue of the proper classification of the plan's claims. In *Buchferer* the debtors provided information about precisely what type of retirement plan was at issue and how they made their loans, and the court was able to fully analyze both the debtors' and the

plan administrator's responsibilities under that plan in the event of default.

Especially given the Debtors, burden of proof on § 1325(b)(1)(B) issues, the instant record is easily distinguishable from that in *Buchferer* because the *Buchferer* debtors proved to that court that their loan was a valid secured debt and that repayments made toward their debt were reasonably necessary for their support. The Husband's testimony here failed to provide substantial information regarding what type of retirement plans he and his wife had, whether the loans made against them were in fact secured and in what manner, and what rights and responsibilities they and the plan administrator would have in the event of their defaults. Moreover, the Debtors failed to submit adequate documentation into the record at the hearing which would have amplified the Husband's brief testimony relating to these issues. The submission of loan documents as exhibits to the Debtors' brief, at a juncture when they cannot be examined by the objecting parties and serve as a basis for presentation of evidence in support of the objections, is not an acceptable alternative.

Without evidence that the Debtors' monthly repayments to loans from their retirement plans are reasonably necessary expenses or that they are debts subject to a specific security interest, there is no basis upon which to justify excluding these expenses from the Debtors' disposable income. This aspect of Mellon's objection is therefore sustained.

■ With respect to the issue of monthly payments for their 12–year–old son's parochial school tuition, the Debtors have again failed to meet the necessary burden of proof for overcoming § 1325(b)(1)(B) objections articulated previously at page 74 *supra*, *i.e.*, that this is not a luxury expense but a reasonably necessary one. Judge Fox of this court has held, we think correctly, that send-

---

2. The deductions of the payments at issue from the Debtors' paychecks raised some issue as to whether the pension plans actions constituted illegal collection activities barred by the automatic stay. *See In re Patterson*, 967 F.2d 505, 508–14 (11th Cir.1992); *In re Hellums*, 772 F.2d 379 (7th Cir.1985); and *In re Hollinger*, 1990 WL 41882 (Bankr.E.D.Pa. April 6, 1990). Of course,

if the debts at issue are secured claims which the Debtors have continued to voluntarily pay subsequent to the bankruptcy filing, the collection of these payments would be comparable to a debtor's post-petition payment on an obligation secured by a mortgage and would not be a violation of the automatic stay.

ing one's child to parochial school is not, in certain circumstances, an unreasonable expense, and that such an expenditure may, in certain circumstances, not have to be considered as disposable income. *See In re Navarro,* 83 B.R. 348, 356–57 (Bankr.E.D.Pa.1988). However, sending a child to a private school can, in some circumstances, certainly be found to be a luxury expense because "a debtor does not have the right to force his creditors to donate to his children's education." *In re Attanasio,* 218 B.R. 180, 231 (Bankr.N.D.Ala.1998), quoting *In re Goodson,* 130 B.R. 897 (Bankr.N.D.Okla.1991).

 The Debtors are not only sending their son to parochial school, but to a parochial school many miles from their home. The Husband's testimony on this issue was extremely terse, and failed to help us understand his desire to not only send his son to a private Catholic school, but to one located in New York City, rather than a school proximate to rural Quakertown, where the Debtors live. In fact, a desire to send a child from an area which promises uncrowded public schools to a city school is, we suspect, the reverse of that which would be expressed by most parents. The only explanation presented on the record, as opposed to by means of improper additions to the Debtors' brief, was that the Husband wanted his son to attend Catholic school because he himself is Catholic. This is a logical but insufficient basis to justify this expense. The Husband did not adequately explain or submit any documentation to the record supporting his choice to not send his son to either a public school or possibly a less expensive parochial school in his neighborhood.

We find that the Debtors' parochial-school situation is less like merely sending a child to a religious school and more like sending the child to a private boarding school, which normally would be considered a luxury expense. *See* 8 COLLIER, *supra,* ¶ 1325.08[4][b], at 1325–53. Thus, the Debtors have failed to meet their burden of proving that their monthly tuition payments for their son's schooling should not be calculated as disposable income, and this aspect of Mellon's objection will be sustained as well.

Finding that we must sustain both aspects of the objection before us, confirmation of the Plan must be denied. We are, as we indicated at page 74 *supra,* dismayed that the Debtors needlessly delayed in presenting this unresolved dispute before us by seeking continuances of confirmation hearings, while making no amendments to the Plan. However, it is apparent to us that the Debtors may be capable of filing an amended plan which devotes the payments found by us to be disposable income to unsecured creditors. Also, at least as to the retirement fund payments, the Debtors may be capable of successfully overcoming an objection to confirmation on this ground by presenting a record which brings this expenditure within the scope of the payments at issue in *Buchferer.*

On the other hand, Mellon and perhaps the Trustee can properly raise additional written objections to confirmation in response to any amended plan and, at such a late juncture in this case, we are inclined to give the Debtors only one additional opportunity to amend their plan and achieve confirmation in this case in short order, or we will dismiss this case. *See Rothman II, supra,* 206 B.R. at 112–13; and *In re Hadley,* 1994 WL 96969, at *6–*7 (Bankr.E.D.Pa. March 23, 1994).

### D. CONCLUSION

An Order consistent with this Opinion will be entered.

### ORDER

AND NOW, this 24th day of June, 1998, after a hearing on the Objection ("the Objection") of Mellon Bank, N.A. to confirmation of the Debtors' Chapter 13 plan ("the Plan") on May 28, 1998, and consideration of the post-hearing submissions by the parties and the Standing Chapter 13 Trustee, it is hereby ORDERED AND DECREED as follows:

1. The Objection is SUSTAINED in substantial part, as reflected in the within Opinion.

2. Confirmation of the Plan is DENIED.

3. The Debtors shall resolve all outstanding impediments to Confirmation, including those identified in the foregoing opinion, by filing and serving an amended plan in all

respects consistent with this Opinion, as well as making any other filings necessary to achieve confirmation, on or before July 1, 1998, or this case will be dismissed.

4. A final hearing to consider confirmation and dismissal of this case is scheduled on

TUESDAY, JULY 28, 1998, AT 9:30 A.M.

and shall be held in Bankruptcy Courtroom No. 1, Second Floor, 900 Market Street, Philadelphia, PA 19107.

5. No continuances of the aforementioned confirmation hearing will be permitted, and this case will be dismissed on July 28, 1998, if a plan cannot be confirmed on that date.