**In re Baldo Fabela ESQUIVEL, Debtor.**

**Bankruptcy No. 99–20327.**

United States Bankruptcy Court, E.D. Michigan, Northern Division.

Sept. 23, 1999.

J. Joseph Purtell, Bay City, MI, for Debtor.

George E. Jacobs, Bay City, MI, for Chapter 13 Trustee.

### OPINION REGARDING CONFIRMA-TION OF DEBTOR'S CHAPTER 13 PLAN

ARTHUR J. SPECTOR, Chief Judge.

The Trustee objects to confirmation of Debtor's chapter 13 plan, which characterizes funds borrowed from Debtor's pension account as *secured* debt and excludes pension-account loan repayments from Debtor's disposable income,[1] while paying 8% of unsecured creditors' claims, on the grounds that it contravenes 11 U.S.C. § 1325(b)[2] and the "spirit of relief" of the Bankruptcy Code. The Court concludes that Debtor's plan is not confirmable because (1) the proposed pension-account loan repayments violate 11 U.S.C. § 1325(b), as they are "not reasonably necessary ... for the maintenance or support of [Debtor] or a dependent of [Debtor];" and (2) Debtor's borrowing of funds from his retirement account does not create a debtor-creditor relationship, and consequently, the pension-account debt cannot give rise to a "secured claim" under the Bankruptcy Code.

### I. FACTS

Debtor filed his chapter 13 petition, schedules, and plan on February 16, 1999. He listed his employer, Consumers Energy, as a *secured* creditor of a $6,000 debt arising out of funds Debtor had borrowed from his ERISA-qualified 401(k) account.

---

1. "Disposable Income" is defined in § 1325(b)(2)(A) as "income which is received by the debtor and which is not reasonably necessary to be expended .... for the maintenance or support of the debtor or a dependent of the debtor." 11 U.S.C. § 1325(b)(2)(A).

2. 11 U.S.C. § 1325(b) provides in relevant part:
 (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan-
 (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

Debtor amended his plan twice, filing the second amended plan on August 20, 1999. Debtor's proposed amended plan provides for repayment in full through the plan of the 401(k) loan at 7.41% interest, while paying unsecured creditors 8% of their allowed claims. The Debtor is unmarried and lists no dependents. The issue is whether Debtor has committed all of his disposable income to funding the plan as required by § 1325(b).

## II. THE RULE OF IN RE HARSHBARGER

The controlling precedent on this issue is *In re Harshbarger*, 66 F.3d 775 (6th Cir.1995). In *Harshbarger*, the chapter 13 trustee objected to the debtors' plan which excluded from disposable income monthly payroll deductions to repay monies borrowed by one of the debtors from her ERISA-qualified account. *Id.* at 777. The *Harshbarger* court held that the debtors' plan was not confirmable because these repayments should have been included "as part of the disposable income in the bankruptcy estate" to satisfy the requirements of 11 U.S.C. § 1325(b). *Id.* In this regard, the court, relying on *In re Scott*, 142 B.R. 126, 133 (Bankr.E.D.Va.1992), stated, "This expenditure may represent prudent financial planning, but it is not necessary for the 'maintenance or support' of the

debtors." *Id.* Citing approvingly *In re Jones*, 138 B.R. 536, 539 (Bankr.S.D.Ohio 1991), the court said that "In these circumstances, 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.'" *Id.* at 778. The rule of *Harshbarger* is that, under the facts and circumstances of the case, a chapter 13 plan which "proposes to pay less than 100% to [the debtor's] unsecured creditors" while excluding from the debtor's disposable income loan repayments to a retirement account is not confirmable under 11 U.S.C. § 1325(b) if the trustee or the holder of an allowed secured claim objects to confirmation.

■■■ Does *Harshbarger* require courts to dispense with the "reasonably necessary" test under § 1325(b)? Or do courts bound by *Harshbarger* still have discretion to look at the "totality of circumstances" to determine whether loan repayments to pension accounts must be included in disposable income to satisfy the requirements of § 1325(b)? The court, in *In re Fulton*, 211 B.R. 247, 264 (Bkrtcy.S.D.Ohio 1997),[3] considered this issue in the context of the chapter 13 trustee's attempts to distin-

---

3. *Fulton* decided four separate cases, in which each of the chapter 13 debtors proposed a plan that would pay unsecured creditors less than 100% of their allowed claims while at the same time excluding from the debtors' disposable income either loan repayments or voluntary contributions to various retirement plans; Fulton's Schedule I reflected a payroll deduction for a loan repayment on a 401(K) account; Turner's Schedule I revealed a payroll deduction for a loan repayment to an ERISA-qualified retirement account; Daltons' Schedule I showed a payroll deduction, part of which went to repay monies borrowed from Mr. Dalton's retirement account, and part of which was a voluntary contribution to Mr. Dalton's 401(K); and Newmans' Schedule I showed a payroll deduction, part of which was to repay a loan from Mrs. Newmans' 401(K), and part of which represented a voluntary contribution into Mrs. Newman's 401(K). The *Fulton*

court found no basis to distinguish the facts of any of the cases from those under *Harshbarger*. However, because the trustee withdrew his objections, the cases could no longer be decided under § 1325(b) which is implicated only when the trustee or a holder of an allowed unsecured claim files an objection. The *Fulton* court held that § 1325(a)(3) provides an alternative basis for denying confirmation to such Chapter 13 plans. It held that "it is equally clear and also appropriate for the Court to consider the principles of § 1325(b) in determining whether a debtor's proposed plan conforms to the good faith requirements of § 1325(a)(3)." *Fulton*, 211 B.R. at 255. The *Fulton* court held that it could not confirm the plans as originally proposed because they violated the good faith standard of § 1325(a)(3) as well as § 1322(a)(1) which provided for all future earnings to be subject to the trustee's supervision and control.

guish the plans proposed from the one in *Harshbarger* based on (1) the sizes of the dividends to be paid to unsecured creditors, (2) the duration of the plans, and (3) the tax hardships avoided under each plan, and opined:

> Instead of giving bankruptcy courts latitude to examine the equities of each of the constituents in these pension loan repayment cases, the Court of Appeals narrowly construes the bankruptcy laws on this point. The *Harshbarger* opinion does not invite lower courts to employ balancing tests or to weigh factors or to consider other evidence identified by debtors that may impact adversely upon concepts of fresh start before deciding whether to confirm the plans in these cases.

*Fulton*, 211 B.R. at 256. This interpretation construes *Harshbarger* too broadly. The "disposable income definition ... imposes upon the court the duty of deciding whether the debtor's expenses are 'reasonably necessary' for the maintenance or support of the debtor or a dependent of the debtor," 8 *Collier on Bankruptcy*, ¶ 1325.08[4][b][i], at 1325-53 (15th ed. rev. 1999). This is an inquiry that necessarily requires the Court to look at the debtor's particular situation. "The disposable-income test is designed to balance the interest of creditors with the interest of the debtor in obtaining a fresh start." *In re Gonzales*, 157 B.R. 604, 608 (Bankr. E.D.Mich.1993). *Harshbarger* and the cases in accord with it have obviated the need to engage in this analysis in the overwhelming majority of factual contexts where debtors are attempting to exclude monies going to repay pension-account loans from disposable income while paying unsecured creditors any amount less than 100%. However, *Harshbarger's* inclusion of such words as "in these circumstances" and "debtors in the present case" to qualify its holding make it clear that the court was not establishing a *per se* rule. Thus, we are not precluded from considering the

Debtor's own particular circumstances or his attempt to distinguish them from the facts in *Harshbarger*.

## III. DISCUSSION

■ The Debtor, whose chapter 13 plan proposes to repay his 401(k) loan in full while paying unsecured creditors 8% of the value of their claims, attempts to distinguish the facts of his case from those in *Harshbarger*, by alleging that his pension-account debt is secured. In *Harshbarger*, the debtors' chapter 13 plan proposed to "treat the ERISA-account loan as a separate class of *unsecured* debt." *Harshbarger*, 66 F.3d at 776 (emphasis added). However, this distinction is irrelevant, particularly when considering the "reasonably necessary" analysis of § 1325(b). Moreover, courts that have considered the status of pension-account loans have overwhelmingly held that, in most cases, they do not give rise to secured or unsecured "claims" or "debts" under the Bankruptcy Code.

### A. Majority View

In *New York City Employees' Retirement System v. Villarie (In re Villarie)*, 648 F.2d 810, 811 (2nd Cir.1981), the chapter 7 debtor listed the Retirement System, to which he made weekly contributions from his paycheck, and from which he had borrowed monies, as a "secured creditor." The System allowed individual members to borrow up to 50% of what they had contributed to it, and required that loans be repaid with interest through weekly payroll deductions. The System commenced an adversary proceeding seeking a declaration that the loan was not a "debt" as defined under the Bankruptcy Code,[4] and thus, it was nondischargeable in bankruptcy. The *Villarie* court analogized the pension-system loan transaction to "an annuitant's withdrawal from the savings account of his annuity fund ... and an insured's advance from the reserve fund of his insurance policy," and held that it did not create

---

4. " 'Debt' means liability on a claim." 11 U.S.C. § 101(12).

a debtor-creditor relationship. *Id.* at 812. The *Villarie* court explained that the System did not have an enforceable "claim"[5] against the debtor under 11 U.S.C. § 502(b)[6] because it did not have a "right to payment" or a "right to sue" him if he failed to repay the loan. The System's only recourse in the event of the debtor's default was to reduce the future benefits payable to him. The *Villarie* court reasoned that because under the Bankruptcy Code "[a] debt is simply 'liability on a claim,'" and there was no enforceable "claim," the loan transaction did not create a "debt" that could be discharged in bankruptcy. *Id.*[7]

The Sixth Circuit, in *Mullen v. United States (In re Mullen)*, 696 F.2d 470 (6th Cir.1983), agreed with the analysis in *Villarie*. In *Mullen*, another chapter 7 case, the debtor sought to hold the United States Air Force ("USAF") in contempt for violating the automatic stay by withholding payment of retirement benefits because the debtor had failed to repay 75% of an adjustment allowance he received before retirement. Under the USAF's retirement system, repayment of 75% of the allowance was a condition precedent to receiving retirement checks. *Id.* at 471. Relying on the legislative history concerning the meaning of "debt" and "claim" under the Bankruptcy Code, and the decision in *Villarie*, the *Mullen* court drew an analogy between the debtor's transaction with the USAF, and an insurance policy loan, and held that the USAF loan did not create a debtor-creditor relationship, a

"claim," or a "debt" under the Bankruptcy Code. *Id.* at 472. The court stated that no "debt" or "claim" can arise where the debtor is not liable for repayment, and the only remedy available for nonpayment is setoff against future payments that will become due. *Id.* The court explained that

> [l]ike the terms of a loan on an insurance policy, the USAF has the right to setoff benefits that have already been paid against benefits that become payable. No interest accrued on the amount owed nor did the USAF have the right to recoup the readjustment allowance from any other source.

*Id.*

With few exceptions, courts considering whether § 1325(b) permits a debtor to exclude retirement-account loan repayments from disposable income under a chapter 13 plan which proposes less than full payment to unsecured creditors, have followed *Villarie* and denied confirmation. *See* Debra Lee Allen, *Qualified Plan Loans in Bankruptcy*, 18–FEB Am. Bankr.Inst. J. 16 (1999). *See also In re Rothman*, 204 B.R. 143, 157–58 (Bankr.E.D.Pa.1996) (Scholl, J.); *In re Cornelius*, 195 B.R. 831, 835 (Bankr.N.D.N.Y.1995) (Gerling, J.); *In re Delnero*, 191 B.R. 539 (Bankr.N.D.N.Y. 1996) (Gerling, J.); *In re Moore*, 188 B.R. 671 (Bankr.D.Idaho 1995); *In re Goewey*, 185 B.R. 444, 446 (Bankr.N.D.N.Y.1995) (Connelly, J.); *In re Cavanaugh*, 175 B.R. 369, 372–73 (Bankr.D.Idaho 1994).

---

**5.** "'Claim' means ... right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]" 11 U.S.C. § 101(5).

**6.** Section 502(b)(1) provides, in relevant part:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow

such claim in such amount, except to the extent that—

(1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

11 U.S.C. § 502(b)(1).

**7.** The *Harshbarger* court specifically declined to decide whether "the debtors' ERISA-qualified account was an enforceable debt" under the Bankruptcy Code, choosing instead to deny confirmation on the basis of § 1325(b). *Harshbarger*, 66 F.3d at 778.

*Jones* followed *Villarie* and *Mullen,* and held that a debtor's loan from his retirement system did not create a "debt" or give rise to a "claim" under the Bankruptcy Code. *Jones,* 138 B.R. at 538. In *Jones,* the debtors' chapter 13 plan proposed to continue a $55.00 per month payroll deduction for repayment of a joint debtor's loan from his retirement system. *Id.* at 537. The retirement system allowed members to borrow up to 100% of what they had contributed to date, and the debtor had borrowed almost the full amount of his contributions. Under the regulations of the retirement system, any unpaid amount of a loan became a taxable distribution and subjected the drawee to tax penalties. The *Jones* court noted that "that the Debtors' existing retirement benefits would be virtually wiped out if the loan [were] not repaid." *Id.* at 539. However, the court denied confirmation of the debtors' plan because (1) no debtor-creditor relationship existed; (2) it was unfair and contrary to the Code's "good faith" requirement to allow the debtors to repay themselves while not paying other creditors in full, *see* 11 U.S.C. § 1325(a)(3); and (3) any other result "would encourage future debtors to take out such loans to insulate their future earnings from their creditors" contrary to 11 U.S.C. § 1322(a)(1), which requires "future earnings or other future income of the debtor" be committed to the trustee's control and supervision. *Id.*

Consistent with *Jones,* and voicing similar policy concerns, the court in *Delnero,* 191 B.R. at 544 (citing *Goewey,* 185 B.R. at 446 (citing *Villarie,* 648 F.2d at 812)), agreed that the retirement-account loans did not constitute "debts" under the Bankruptcy Code. It thereby rejected the debtors' argument that such loans were "secured debts," and that the proposed repayment of them in full was nothing more that the reaffirmation of the "debt." The *Delnero* court stated that "[t]o hold otherwise would convey a message to debtors contemplating bankruptcy that they may borrow against their retirement

funds prepetition and then insulate the repayment of those monies from their creditors postpetition." *Id.* *Delnero* held that these repayments violated § 1325(b) unless the debtor could show that the loan repayments were a condition of his employment. *Id.* at 543.

*Scott* relied heavily on the reasoning of *Villarie* and *Jones,* holding that no debtor-creditor relationship was formed when the debtor borrowed funds from his ERISA-qualified pension account. *Scott,* 142 B.R. at 131. There, the debtor's chapter 13 plan proposed to exclude $790.36 per month from his disposable income to repay sums borrowed from his pension plan while paying a 17% dividend to unsecured creditors. The debtor's pension plan allowed a participant to borrow an amount not to exceed 50% of the amount that he had contributed into the plan. *Id.* at 128. Pre-petition, the debtor had executed a promissory note to the pension account that provided for 10% per annum interest on the pension account loan balance payable in sixty monthly installments of $790.36 each out of debtor's wages. Upon default the borrowed amount would be treated as a hardship withdrawal and a taxable distribution. The *Scott* court held that the obligation to repay the promissory note was not a "debt," and therefore, the pension plan did not hold a "claim" for the money borrowed. *Id.* at 131. *Scott* explained:

> The withdrawal in the case at bar created no right to repayment that the ERISA plan can assert against the debtor. The debtor can terminate the wage assignment on his salary at any time and the ERISA Pension Plan would have no recourse against him. The ERISA Pension Plan could not sue the debtor for the unpaid loan because its remedy is to deduct the unpaid portion of the amount advanced from any benefits the debtor was to receive in the future. The obligation on the note is not a debt in that the debtor merely withdrew money from

his own account and substituted a note for the money taken.

The *Scott* court, like the court in *Jones,* 138 B.R. at 538, distinguished its facts from those where a debtor was allowed to withdraw money from a pension account in excess of what he had contributed and therefore, was in effect, borrowing from the other participants of the fund. The court concluded that this situation would give rise to a debtor-creditor relationship under the Bankruptcy Code. *Scott,* 142 B.R. at 131. *See also Jones,* 138 B.R. at 538.

There is a clear consensus that an individual's pre-petition borrowing from his retirement account does not give rise to a secured or unsecured "claim," or a "debt" under the Bankruptcy Code. *See, e.g. Fulton,* 211 B.R. at 264. Citing *Villarie, Mullen* and *Jones,* and noting that the debtors presented no case law supporting their argument that retirement-account loans were secured debts, the court in *Fulton* stated that it was

> opt[ing] . . . to join with all the other courts which have considered the issue of [pension-account loan repayments], and conclud[ing] that funds borrowed from a debtor's pension plan did not constitute a debt, and the pension plan has no right of repayment against the debtor or the debtor's property which can be classified as a secured claim under the bankruptcy laws.

*Id.* *See also Goewey,* 185 B.R. at 446–47.

## B. *Another View*

Contrary to the overwhelming weight of authority, the court in *In re Buchferer,* 216 B.R. 332, 336 (Bankr.E.D.N.Y.1997) declined to extend *Villarie's* holding in chapter 7 cases to chapter 13. In *Buch-*

*ferer,* the debtors' chapter 13 plan proposed to exclude $1,030 per month from the debtors' disposable income to repay outstanding pension-account loans that had been used to pay down debts, while paying unsecured creditors less than the full value of their claims. The *Buchferer* court held that the retirement system, from which one of the debtors had borrowed money pre-petition, held a valid nonrecourse secured claim in the bankruptcy case. This "secured claim" arose out of retirement system administrator's right to setoff the amounts loaned against the vested amounts in the debtor's retirement account. *Id.* at 337–338. The *Buchferer* court found support in the Bankruptcy Code, particularly in §§ 102(2), 506(a), and 553(a), for construing "claim" broadly as it stated the United States Supreme Court cases had increasingly done. *Id.* at 337. It noted that under § 102(2) a "'claim against the debtor' includes [a] claim against property of the debtor." 11 U.S.C. § 102(2). The court reasoned that, because the vested balance of funds remaining in the retirement account was "property of the debtor," a right to setoff [8] provided by state law against those funds must necessarily be a "claim" under the Bankruptcy Code. *Id.* It stated further that, under § 506(a), "[a]n allowed claim of a creditor . . . that is subject to setoff under section 553 . . .is a *secured* claim to the extent . . . of the amount subject to offset. 11 U.S.C. § 506(a)." *Id.* at 338 (emphasis added). Thus, the court reasoned, the retirement account administrator held a secured claim up to the amount that the debtor had vested in the account, just as a "bank holds a secured claim for all legal and practical purposes (as long as the debtor does not withdraw all 'funds' on deposit before a default is declared to defeat the exercise of the remedy of setoff)."

---

**8.** Section 553(a) deals with a creditor's right to setoff under the bankruptcy code. It provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by

such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a).

*Id.* The court held that because the retirement account claim was secured, the debtors could permissibly and fairly treat it differently from the unsecured claims by paying it in full. The *Buchferer* court rejected the analysis in *Harshbarger* as unpersuasive, and confirmed the debtors' plan over the objection of the trustee. *Id.* at 342. *See also In re MacDonald,* 222 B.R. 69, 75–76 (Bankr.E.D.Pa.1998) (finding "considerable merit in the reasoning of *Buchferer*," and opining that "1F[a] debtor's loans from a retirement plan certainly appear ... to constitute a 'debt' or 'claim ...' [and] do appear in some sense secured and thus entitled to different treatment than unsecured claims"); Henry E. Hildebrand, *The Future of a Harsh Result: In re Harshbarger,* 18–MAR Am. Bankr.Inst. J. 14 (1999) (discussing the conflict between *Buchferer* and *Harshbarger,* and stating that "[t]he recent Conference report of H.R. 3150, considered by the 105th Congress, expressly rejected *Harshbarger* ... [and] would have made the holding of *Buchferer* the law of Chapter 13"); *but see In re Nation,* 236 B.R. 150, 152–53, 155 (Bkrtcy.S.D.N.Y.1999) (holding that the debtor's "repayments into a savings or pension account, like de novo contributions, are 'disposable income' that must be paid into the plan for the benefit of creditors" according to the plain language of § 1325(b); that it is inherently unfair for a debtor to pay himself by funding his own pension account while paying creditors only a portion of their claims; and that the Bankruptcy Code preempts any employment contract or regulation that would conflict with this result); *In re Devine,* Case No. 96–17346DWS, 1998 WL 386380, *8 (Bankr.E.D.Pa. July 7, 1998) (Sigmund, J.) (holding that the debtors' voluntary contributions and loan repayments into a 401(k) plan must be included in their disposable income under § 1325(b), and stating that "[a]lthough the

failure to repay a loan from a 401(k) plan may result in a setoff against a debtor's future benefits and cause the debtor to incur a tax liability for an early withdrawal of retirement benefits, courts have tended not recognize the obligation as a debt"); *In re Gilliam,* 227 B.R. 849 (Bankr. S.D.Ind.1998) ("support[ing] the analysis set out in *Harshbarger, Anes,*[9] *Fulton, Delnero, Goewey, Scott,* and *Jones,* and declin[ing] to adopt the *Buchferer* analysis," and holding that the plan's exclusion from the debtor's disposable income of $190 per month for payments into a pension account violated § 1325(b)).

In *Devine,* Judge Sigmund explained why *Buchferer* was not persuasive.

> While [*Buchferer's* ] analysis has facial appeal, it does not sufficiently refute the argument that the debtor is repaying a loan to himself. The court concluded that repayment of a pension loan was analogous to repaying a mortgage loan in the sense that the repayment of both types of obligations leads to the debtor's accumulation of equity. This analogy is strained because the mortgagee is a third party who gave value to the debtor in the form of a loan of its own money, whereas a pension plan, no matter how it might be structured, gave the debtor a "loan" of his own money. The court's observation that the pension plan administrator is a separate legal entity from the debtor is not helpful since the plan administrator is merely the trustee of a trust in which the debtor is both the settlor and beneficiary. Thus, the only funds the plan administrator had to "loan" was the money it was holding for the debtor as beneficiary, which was in substance the debtor's own money.

*Devine,* 1998 WL 386380 at *9.[10]

*Harshbarger* did not determine the status of the ERISA-qualified account's claim as secured or unsecured. Instead, it relied

---

**9.** *In re Anes,* 216 B.R. 514 (Bankr.M.D.Pa. 1998).

**10.** Moreover, isn't the pension plan's right to withhold payment to a debtor when he retires more in the nature of a recoupment than a setoff?

on the chapter 13 plan's characterization of the loan as "unsecured." It also did not decide whether the loan was a "debt" under the Bankruptcy Code, opting instead to deny confirmation under § 1325(b). *See supra* note 7. However, it did cite with approval *Jones* and *Scott*—decisions which held that pension-account loans did not give rise to enforceable "claims" or "debts" under the Bankruptcy Code. Additionally, in *Mullen,* the Sixth Circuit decided that a retirement-account loan was not a "debt" that could be discharged in chapter 7. There is no reason to believe that the court would see the issue differently now merely because it arises in a chapter 13 context. Accordingly, this Court holds that the Debtor's pension-account loan is not a secured "debt" under the Bankruptcy Code.

### C. Application of § 1325(b) to Secured Debt

 However, even assuming the pension-account loan could be characterized as a secured "debt," this fact would not eliminate the need to perform the "reasonably necessary" analysis required by § 1325(b). In *In re Rogers,* 65 B.R. 1018, 1022 (Bankr.E.D.Mich.1986), this Court denied confirmation under § 1325(b) of a debtor's chapter 13 plan that provided for payment in full of a secured debt while paying unsecured creditors 17% of their claims. The Court found that such payment was "not reasonably necessary . . . for the maintenance or support of the debtor." 11 U.S.C. § 1325(b). In *Rogers,* the debtor owned two 1984 automobiles; a Cavalier valued at $4,200 and subject to a $4,707.15 secured claim of General Motors Acceptance Corporation ("GMAC"); and a Corvette valued at $14,000 and subject to GMAC's $17,158.97 secured claim. The debtor's plan provided for sale of the Cavalier and retention of the Corvette. *Id.* at 1019–1020. Payments for the Corvette were to be made through the plan at $440 per month, amounting to $17,158.97 over the life of the plan. *Id.* at 1020. Two unse-

cured creditors objected to confirmation of the plan on the ground that it violated the "disposable income" requirement of § 1325(b). *Id.* at 1019. This Court agreed, holding that basic transportation was all that was reasonably necessary for the maintenance and support of debtor, and that any amount exceeding $10,000 was not reasonable and could not be excluded from "disposable income" under § 1325(b). We found that the additional $7,158.97 earmarked for transportation under the plan was, therefore, a luxury designed for "pampering [the debtor's] own psyche at the expense of her unsecured creditors." *Id.* at 1022.

Accordingly, this Debtor's proposal to spend $6,000 to fund a retirement plan must be judged by the "reasonably necessary" test of § 1325(b) regardless of how he characterizes the pension-account loan. Given *Harshbarger,* and the large body of supporting case law covering many different factual scenarios that hold that pension-account loan repayments are not "reasonably necessary" for the support of the debtor, it is hard to conceive of a factual context which would justify such repayments under § 1325(b). This is especially so in light of *Jones,* where the court found that repayments of a pension-account loan were impermissible under § 1325(b) even though the debtor would be left with virtually no pension benefits. The Debtor has failed to show any extraordinary facts or circumstances that would make the application of the *Harshbarger* rule to his case inequitable, or that somehow this $6,000 contribution is otherwise "reasonably necessary to be expended for . . . [his] maintenance or support." 11 U.S.C. § 1325(b)(2).

### IV. DEBTOR'S OTHER ATTEMPT TO DISTINGUISH HARSHBARGER

Debtor also attempts to distinguish his case from *Harshbarger* by noting that his plan provides for repayments of his 401(k) loan *through* the plan rather than *outside* of the plan. In *Harshbarger* the pension-

account repayments were accomplished by monthly payroll deductions and therefore, were outside the plan. However, this is a distinction with no meaningful significance to the outcome of this matter. It is undisputed that the money going to repay Debtor's 401(k) loan is income received by Debtor. Therefore, under the plain meaning of § 1325(b)(2)(A), the only way it can be excluded from Debtor's "disposable income," is through a showing by Debtor that it is reasonably necessary for his, or a dependent's maintenance or support. There is no support in the language of § 1325(b)(2)(A) or case law for Debtor's proposition that income expended outside of the plan is excepted from the "reasonably necessary" requirement of § 1325(b)(2)(A). Therefore, the Court rejects this attempt to distinguish *Harshbarger*.

## V. CONCLUSION

For the foregoing reasons, the Court holds that the Debtor's chapter 13 plan cannot be confirmed because it violates § 1325(b) in providing for repayments of a pension-account loan while not providing for payment in full of unsecured creditor claims. An order sustaining the Trustee's objections and denying confirmation of the plan has been entered.