691 S.E.2d 537

**James G. CLAY, Michael R. Corbett, and Katherine Hoopengarner, Plaintiffs Below, Appellants,**

v.

**STATE of West Virginia CONSOLIDAT-ED PUBLIC RETIREMENT BOARD, Defendant Below, Appellee.**

Nos. 34944, 34945.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 9, 2010.

Decided March 5, 2010.

Bradley J. Pyles, Esq., Pyles, Turner & Mick, LLP, Logan, WV, for Appellants, James G. Clay and Michael R. Corbett.

Timothy M. Sirk, Keyser, WV, for Appellant, Katherine Hoopengarner.

J. Jeaneen Legato, Esq., West Virginia Consolidated Public Retirement Board, Charleston, WV, for the Appellee.

PER CURIAM:

In this appeal from the Circuit Court of Kanawha County, we are asked to consider whether pension loans made by the West Virginia Consolidated Public Retirement Board to three retirement system participants were discharged when the participants filed for bankruptcy. The Board asserts that, under the law at the time of the participants' bankruptcies, the loans could not have been discharged in bankruptcy, but made no attempt to collect those loans. The Board now asserts—over 20 years after the participants' debts were discharged in bankruptcy—that the loans were not debts and were not discharged, and asserts that it may collect both the principal and compounded interest on those loans.

An administrative law judge for the Board concluded that the loans made by the Board to the participants were not debts subject to discharge in bankruptcy. The administrative law judge then ruled that under state law, and pursuant to the loan agreements signed by the participants, the principal and interest on those loans had to be repaid to the Board. On appeal, the circuit court entered an order affirming the administrative law judge's rulings.

After careful consideration, we conclude that the administrative law judge was correct in finding that the principal amount of the participants' pension loans were not "debts" under bankruptcy law because the participants merely borrowed their own money, and therefore could not be discharged in bankruptcy. However, we find that the Board is prohibited from collecting compounded interest on those loans. Accordingly, we affirm, in part, and reverse, in part, the circuit court's order affirming the administrative law judge.

## I.

### Facts and Background

The appellants—James G. Clay, Michael R. Corbett, and Katherine L. Hoopengarner—were school employees who made regular contributions into the Teachers Retirement System, which is now administered by the appellee, the West Virginia Consolidated Public Retirement Board ("the Board"). State law permitted "an actively contributing member" of the Teachers Retirement System to "borrow from his or her individual account" up to $8,000.00, repayable over a maximum of 60 months. *W.Va.Code*, 18–7A–34(a) [2009].[1] In the 1980s, each appellant obtained a loan from the Teachers Retirement System, and each appellant signed an agreement to repay the loan, with interest, by way of monthly payroll deductions.

---

1. *W.Va.Code*, 18–7A–34(a) states, in part:

    (a) An actively contributing member of the retirement system upon written application may borrow from his or her individual account in the Teachers Retirement System, subject to these restrictions:

    (1) Loans shall be made in multiples of $10, the minimal loan being $100 and the maximum being $8,000: Provided, That the maximum amount of any loan when added to the outstanding balance of all other loans granted under this section shall not exceed the lesser of the following: (A) $8,000 reduced by the excess, if any, of the highest outstanding balance of loans during the one-year period ending on the day before the date on which the loan is made, over the outstanding balance of loans to the member on the date

    on which the loan is made; or (B) fifty percent of the member's contributions to his or her individual account in the Teachers Retirement System[.] . . .

    (5) From his or her monthly salary as a teacher or a nonteacher the member shall pay the loan and interest by deductions which will pay the loan and interest in substantially level payments in not more than sixty nor less than six months. Upon notice of loan granted and payment due, the employer is responsible for making the salary deductions and reporting them to the retirement board.

    We note that, effective July 1, 2005, the Legislature amended the statute to prohibit any more loans from the Teachers Retirement System. *See W.Va.Code*, 18–7A–34(b).

Before the loans were fully repaid, during the 1980s each appellant filed a Chapter 7 "liquidation" bankruptcy proceeding in a United States District Court. In each bankruptcy proceeding, each appellant listed the Board as an unsecured creditor.[2] Subsequent to each bankruptcy filing, it appears that the Board notified each appellant's employer to stop making payroll deductions to repay the loans.[3]

During the 1980s, in each appellant's bankruptcy case, the bankruptcy court issued an order that released each appellant "from all personal liability for debts existing on the date of commencement of this case," and ordering that "[a]ll creditors are prohibited from attempting to collect any debt that has been discharged in this case." From the last bankruptcy court order in 1989 until 2003, none of the appellants made any payments to the Board, and the Board made no attempts to resume its payroll deductions or collect any payments from the appellants. Furthermore, each appellant received an annual statement from the Board reflecting their total payroll contributions, but none of these statements reflected an unpaid liability on the loans that could be offset against their future benefits. The appellants later testified that they believed their loan obligations to the Board had been discharged by the bankruptcy courts' orders.

In 1990, the Board recognized a developing problem involving members of the Teachers Retirement System who had obtained a loan and then subsequently filed for bankruptcy before the loan was repaid. In a January 22, 1990, memorandum from an assistant attorney general to the Board, the Board was advised that if a member of the Teachers Retirement System filed a Chapter 7 bankruptcy petition before January 1990, any loans to the member from the System were likely discharged. The memorandum states:

> Generally, whenever an individual files for bankruptcy he or she will file a "Chapter 7" petition which calls for the liquidation of all pre-petition debts and that the creditors accept a certain percentage of the outstanding debt as payment in full. Such may very well be the case for members of [the Teachers Retirement System].

The memorandum goes on to state that *after* January 1990, the assistant attorney general planned to argue to the bankruptcy court that loans from the Teachers Retirement System should not be discharged. The assistant attorney general said he intended to argue to the bankruptcy court that only monthly repayments toward the loans should be stopped, and the balance owing on the loan should be collected from the member whenever the member reaches retirement.[4] The assistant attorney general's memorandum contains no discussion or recommendations regarding interest on the loans.

Thirteen years later, in mid-2003, the Board sent letters to the appellants demanding that they repay the outstanding balances of their loans. Furthermore, in subsequent

---

**2.** Mr. Clay borrowed $3,830.00 at 9.5% interest in 1984, and at the time of his bankruptcy petition in 1986 owed $2,103.50. In 1985, Mr. Corbett borrowed $6,403.17 at 11.25% interest, and when he filed for bankruptcy in 1987 he owed $4,022.71. Ms. Hoopengarner borrowed $6,503.00 at 11.25% interest in 1988, and when she filed for bankruptcy in 1989 noted an outstanding balance of $4,585.62.

**3.** The federal Bankruptcy Code provides an "automatic stay" that requires every creditor to stop collecting, or attempting to collect, most types of debt from a debtor immediately upon the filing of a petition with the bankruptcy court. *See* 11 U.S.C. § 362.

**4.** The assistant attorney general's January 22, 1990 letter states, in part:

> In the future, I have argued to the Bankruptcy Court ... that the outstanding loan balance owed to TRS by a member who files for Chapter 7 bankruptcy is a pre-petition offset and that the only relief available to the member in the Bankruptcy Court is a suspension of monthly repayment on the loan following the filing of the bankruptcy petition....
>
> However, and this is most important, the outstanding balance owed to TRS shall not be eliminated and is not dischargeable by the Court. The outstanding balance of the loan shall be collected from the member whenever the member reaches retirement status, or whenever the member terminates his employment and requests withdrawal of any contributions. In either case, payment of the outstanding loan balance shall be made first prior to any monies being paid to the member....
>
> I hope that the above will be helpful to you in administering the loan program in the future.

letters sent to the appellants in 2004, the Board demanded that the appellants pay 15 to 17 years of interest that had accumulated on the loans. In December 2003, Mr. Clay repaid his loan balance of $2,103.50, but in January 2004 was told that he owed an additional $7,671.24 in interest. Mr. Corbett and Ms. Hoopengarner offered to repay only the balance of their loans, but the Board demanded repayment of both the principal and interest.

The appellants filed petitions with the Board seeking an administrative review of their cases. The appellants insisted that their obligations to repay the loans to the Board had been discharged in bankruptcy, and that the Board was wrong to interpose a demand for repayment of the loans so many years later. However, on August 2, 2005, the Board entered an order that adopted the decision of an administrative law judge and that rejected the appellants' position, and concluded that the appellants had a duty to repay both the loans and the years of accumulated interest.

On September 1, 2005, the appellants filed the instant case in the circuit court seeking appellate review of the Board's decision. In an order dated October 17, 2008, the circuit court affirmed the Board's decision. The circuit court concluded that state law, state regulations, and the loan agreements signed by the appellants all required the appellants to fully repay any unpaid loans, including compounded interest, to the Board.

The appellants now appeal the circuit court's October 17, 2008 order.

## II.

### Standard of Review

■ "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4[g] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996). *W.Va.Code*, 29A–5–4(g) [1964] contains the following standards for a court reviewing an agency's administrative decision:

(g) The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:

(1) In violation of constitutional or statutory provisions; or

(2) In excess of the statutory authority or jurisdiction of the agency; or

(3) Made upon unlawful procedures; or

(4) Affected by other error of law; or

(5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## III.

### Discussion

■ The central legal issue in this case is whether the appellants' loans from the Teachers Retirement System were discharged in their Chapter 7 bankruptcy proceedings during the 1980s.[5] The parties in the instant appeal dispute whether the three appellants' loans were discharged by the bankruptcy courts' orders entered in 1986, 1987 and 1989.

The appellee Board contends that loans from a government pension plan are not

---

**5.** This issue was squarely addressed by Congress as part of the Bankruptcy Prevention and Consumer Protection Act of 2005—but only for bankruptcy petitions filed after October 17, 2005. The 2005 Act states that "any loan made under a governmental [pension] plan" cannot be discharged in bankruptcy. *See* 11 U.S.C. § 523(a)(18) [2007]. However, this statute would appear to have limited effect in West Virginia because, in 2005, the West Virginia Legislature prohibited the Teachers Retirement System from making any further loans of pension funds. *See* footnote 1, *supra*. Accordingly, our decision today would also appear to be of limited effect.

debts subject to discharge in bankruptcy. The Board cites to one of the earliest cases on the question, *In re Villarie*, 648 F.2d 810 (2nd Cir.1981) (*per curiam*), where the bankruptcy court considered a loan from a government pension fund to a government employee and concluded that the loan was not a "debt that can be discharged in bankruptcy." 648 F.2d at 811.

In *Villarie*, a New York City employee was a member of the City's retirement system. The employee obtained a loan from the City retirement system, a loan that was "in effect ... an advance against the member's future retirement benefits." 648 F.2d at 811. The loan agreement required the employee to "repay the loan, with interest, through payroll deductions[.]" *Id.*

The *Villarie* court examined two cases with analogous transactions that "failed to give rise to a debtor-creditor relationship: an annuitant's withdrawal from the savings account of his annuity fund; and an insured's advance from the reserve fund of his insurance policy." 648 F.2d at 812 (citations omitted). In both cases, the courts found that the transactions were not dischargeable in bankruptcy because the borrower "had merely borrowed ... his own money[.]" *Id.*

The court in *Villarie* also found an analogous transaction in the congressional record underlying adoption of the 1978 Bankruptcy Code. The congressional record states:

> [The] definition of "debt" and the definition of "claim" on which it is based ... will not include a transaction such as a policy loan on an insurance policy. Under that kind of transaction, the debtor is not liable to the insurance company for repayment; the amount owed is merely available to the company for setoff against any benefits that become payable under the policy. As such, the loan will not be a claim (it is not a right to payment) that the company can assert against the estate; nor will the debtor's obligation be a debt (a liability on a claim) that will be discharged[.]

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 310 (1977). The *Villarie* court relied upon congressional discussion of the definitions of the words "debt" and "claim," and the statement that loans from an insurance policy are not debts dischargeable in bankruptcy, and concluded that a debtor's loan from his retirement fund is not a debt dischargeable in bankruptcy.

The appellee Board argues that, under *Villarie* and its progeny,[6] the appellants' loans

---

**6.** *See, e.g., Eisen v. Thompson*, 370 B.R. 762 (N.D.Ohio 2007) ("Almost all of the courts have held that retirement plan loans are not bankruptcy debts subject to discharge, primarily based on the rationale that the monies 'borrowed' are merely advances from the debtor's own retirement fund which will be deducted from the fund if the debtor does not replace the funds."); *McVay v. Otero*, 371 B.R. 190 (W.D.Tex.2007) (loans from debtors' employee retirement plans were not "debts" of debtors); *In re Esquivel*, 239 B.R. 146, 151 (Bankr.E.D.Mich.1999) ("[t]here is a clear consensus that an individual's pre-petition borrowing from his retirement account does not give rise to a secured or unsecured 'claim,' or a 'debt' under the Bankruptcy Code."); *In re Fulton*, 211 B.R. 247, 264 (Bankr.S.D.Ohio 1997) ("[F]unds borrowed from a debtor's pension plan do not constitute a debt, and the pension plan has no right of repayment against the debtor or the debtor's property which can be classified as a secured claim under the bankruptcy laws."); *In re Scott*, 142 B.R. 126, 131 (Bankr.E.D.Va.1992) (A retirement loan is not a "debt," as it "created no right to repayment that the ERISA plan can assert against the debtor.... The ERISA Pension Plan could not sue the debtor for the unpaid loan because its remedy is to deduct the unpaid portion of the amount advanced from any benefits

the debtor was to receive in the future. The obligation on the note is not a debt in that the debtor merely withdrew money from his own account...."); *In re Jones*, 138 B.R. 536, 537–38 (Bankr.S.D.Ohio 1991) (A debtor's loan from his retirement plan did not create a "debt," as "any amounts not repaid to the [retirement account] are merely offset from the Debtor's future benefits. Thus, the [plan] administrator has no right to repayment, and the loan does not constitute a 'claim' ... nor a 'debt.'"); *Mullen v. U.S.*, 696 F.2d 470 (6th Cir.1983) (an advance on a debtor's Air Force retirement benefits that subsequently must be repaid is also not a "debt"). *See also In re Harshbarger*, 66 F.3d 775, 778 (6th Cir.1995) (extending *Villarie* from Chapter 7 cases to Chapter 13 cases). *But see In re MacDonald*, 222 B.R. 69 (Bankr.E.D.Pa.1998) ("A debtor's loans from a retirement plan certainly appear to us to constitute a 'debt' or 'claim.'"); *In re Buchferer*, 216 B.R. 332 (Bankr.E.D.N.Y. 1997) (because the government pension plan held a claim against property of the debtor—the debtor's unpaid loan could be reclaimed from the debtor's future retirement benefits—then the plan held a statutorily-defined "claim" against the debtor, and the loan was a debt that could be discharged in bankruptcy); *In re Miranda Soto*,

were clearly not discharged by the bankruptcy courts' orders.

The three appellants counter that the Board's interpretation of bankruptcy law under *Villarie* was not apparent to the appellants, their bankruptcy counsel, or the bankruptcy judges in the 1980s. Further, while the Board's interpretation of bankruptcy law might be legally correct, the appellants point out that—unlike the pension fund in *Villarie*—the Board never appeared and presented that interpretation in the 1980s to the bankruptcy judges in the appellants' bankruptcy cases. The appellants assert that neither the Fourth Circuit Court of Appeals nor the bankruptcy courts in West Virginia have ever published a decision that addressed this question, let alone clearly adopted (or rejected) the reasoning in *In re Villarie*. Under these circumstances, the appellants assert that it would be unfair to permit the Board to collect the principal and interest of the loans so many years later.

After carefully reviewing the authorities cited by the parties, we agree with the Board that the *principal* portion of each appellant's loan, due and owing at the time of the filing of the appellant's bankruptcy petition, was not discharged by the bankruptcy courts' orders. We agree with the Board's argument that the principal amount of a loan of pension benefits is, as was previously noted from the congressional record, "merely available to the [Board] for setoff against any benefits that become payable" from the appellants' retirement benefits. The logic of Congress is that such a "loan" is nothing more than a plan participant moving his/her own money from the right pocket to the left. Repaying the loan then becomes nothing more than shifting money back to the right pocket.

■ But neither *Villarie* nor Congress say anything about interest on such a loan. And if one simply moves money from their right to their left pocket, it seems absurd for the right pocket to then demand that interest be paid for so long as the money sits in the left pocket. We do not believe that *Villarie* supports the Board's attempt to collect the *interest* on the appellants' loans, interest that has now compounded for over two decades.

The record is clear that the Board failed to make any effort to appear before the bankruptcy courts in the 1980s to obtain clear rulings about the appellants' pension loans.[7] In *Villarie*, the pension fund commenced a proceeding in the bankruptcy court seeking an order allowing it to resume deducting loan payments from the employee's paychecks. 648 F.2d at 811–12.[8] The Board's agreement in this case with the appellants indicated that their loans would be repaid through payroll deductions—but the Board halted those payroll deductions upon the filing of each appellant's bankruptcy petition, and unlike in *Villarie*, never made any effort before the bankruptcy court to resume those deductions. The Board did nothing until 2003 when it informed the appellants that they would be responsible for repaying the principal on their loans. Further, it was not until 2004 that it told the appellants they would also be responsible for compound interest on those loans.

---

667 F.2d 235, 238 (1st Cir.1981) ("We find nothing in the Bankruptcy Code that suggests that the loan [from the debtor's pension plan] did not create a debt that was dischargeable in bankruptcy."); *In re Thompson* 182 B.R. 140 (Bankr. E.D.Va.1995) (rejecting *Villarie* and holding that overpayment of disability benefits prior to bankruptcy was a "claim" under the Bankruptcy Code); *Lugo v. Paulsen,* 886 F.2d 602 (3rd Cir. 1989) (*Villarie* inapplicable, and loan is a dischargeable "debt," where pension plan has a remedy to collect the obligation).

7. This Court was initially concerned that the bankruptcy courts' expansive orders may have had a *res judicata* effect upon the Board's actions. *See Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). But because this

issue was neither raised nor briefed by the parties, we decline to give further consideration to the question.

8. A cursory examination of the progeny of *Villarie,* cited *supra* in footnote 6, reveals an obvious conclusion: the proper forum for challenging the dischargeability of a pension loan and interest on that loan is the bankruptcy court at the time a bankruptcy petition is filed, and not decades later in a state court. Every case that we can locate that involves a *Villarie*-type loan agreement originated before a bankruptcy judge. In each case, the government pension fund immediately sought a ruling from the bankruptcy court that a pension loan was not a dischargeable debt, and in most cases sought to immediately resume collecting repayments of the loans from the debtors.

The Board was advised by an assistant attorney general in 1990 that the appellants' loans "may very well" have been discharged in bankruptcy. While we think this advice was not correct, it is clear that the Board never sought a ruling from the bankruptcy courts concerning interest on these loans. As we interpret *Villarie,* the proper route would have been for the Board to have immediately, in the 1980s, sought permission from the bankruptcy court to resume payroll deductions from the appellants to repay the loans. It was improper for the Board to do nothing, and attempt to collect compounded interest decades after the fact.

## IV.

### *Conclusion*

The circuit court's October 17, 2008 order is affirmed, in part, and the appellants may be required to repay the balance of their loans due at the time of the filing of their bankruptcy petitions. However, the Board may not collect interest compounded on those loans in the decades following the appellants' bankruptcy petitions. To that extent, the circuit court's order is reversed, and the case is remanded for further proceedings consistent with this ruling.

Affirmed, in part, and Reversed, in part, and Remanded.